THE KENILWORTH.

(Circuit Court of Appeals, Third Circuit. March 5, 1906.)

No. 64.

1. SEAMEN—INJURIES—DUTIES OF OWNER AND MASTER.

It is the duty of the shipowners to provide proper medical treatment and attendance for seamen suffering injury in the service of the ship, and of the master, where a serious accident occurs, to exercise a reasonable judgment as to putting into the nearest available port, but whether or not these duties have in any instance been adequately discharged is to be determined with reference to the peculiar facts of the particular case.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, §§ 39–44.]

2. SAME—EXPENDITURES.

>A vessel is not liable for expenditures made by others on behalf of an injured seaman which he is under no obligation to reimburse, and which were made when the cure had been completed, at least so far as the ordinary medical means extend.

Appeal from District Court of the United States for the Eastern District of Pennsylvania.

J. H. Brintow, for appellant.

H. R. Edmunds, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This is an appeal from a decree of the District Court for the Eastern District of Pennsylvania dismissing a libel in admiralty which was filed by the appellant. 137 Fed. 1003; 139 Fed. 59. The libelant was employed as a seaman on the bark Kenilworth, when she shipped a heavy sea which knocked him down and broke his right leg above the knee. The libel alleged that her master and officers failed to give him due care and attention, and that by reason of their failure to do so, the fractured ends of the bone overlapped each other and thus became knitted together, with the result that his right leg has been permanently shortened by about two inches, and that, if the master had afforded him reasonable and proper care in setting the fractured bone, his injuries would have been comparatively slight and of a temporary character. It further alleged that "the master, however, refused to believe that the bone was fractured, and therefore refused attention to the libelant, and also refused to put into the nearest port for medical attention"; and it averred that, "by reason of the premises, * * * he has been injured in a sum exceeding $5,000 for unnecessary pain and suffering endured, and to the endured expenses incident to proper medical attention and permanent lameness, all of which would have been avoided by the exercise of proper care and attention by the master."

Legal responsibility for negligence does not exist in the absence of a duty of care, and upon the scope of the correlative duty in any case the extent of the liability for negligence depends. In this case the duties which it is asserted were not discharged may be stated, in general terms, to be that of the shipowners to provide proper medical treatment and attendants for seamen suffering injury in the service of the ship, and that of the master, where a serious accident occurs, to exercise a reasonable judgment as to putting into the nearest available port; but whether or not these duties have in any instance been adequately discharged is to be determined with reference to the peculiar facts of the particular case. The Iroquois, 194 U. S. 240, 24 Sup. Ct. 640, 48 L. Ed. 955.

It is not claimed that the Kenilworth was a vessel upon which a physician or surgeon should have been employed, and the fact that the master did not perceive that Krelly's leg was broken is of primary and controlling importance; for, if it had not been, neither the treatment which the master administered nor his omission to put into port could have been reasonably complained of. That he was mistaken as to the

true nature of the injury is now perfectly plain, but we concur in the finding of the court below that the opinion upon which he acted, though erroneous, was honestly entertained by him. The surgeons who were called by the respective parties differed as to whether, by the exercise of proper care, he might not have discovered the fracture, but attentive examination of the record has fully satisfied us that the learned judge was right in holding, upon all the evidence, that he was "careful according to his light, and that his judgment upon what he saw found plenty of support, both at the time and afterward."

In considering whether he was or was not duly careful, we are bound, so far as possible, to put ourselves in his place. He was not required to have the skill or discernment of a surgeon, and the opinion which he formed, if viewed in no clearer light than was afforded by such limited knowledge as may be justly attributed to him, does not appear to have been an unreasonable one, and the treatment which he adopted, when considered in connection and conformity with that opinion, was neither negligent nor improper. Nor was the injury, as it appeared to the master, of so serious a character as should have induced him, in the exercise of a reasonable judgment, to put into any of the intermediate ports to which counsel has suggested he might have resorted, but to none of which could he have taken his vessel without considerably delaying her voyage, and thereby injuriously affecting the interests of her owners. The Iroquois, supra.

The libel was amended as follows:

"The libelant, in addition to that set forth in the libel, claims to recover for expenses which he has already incurred and may hereafter be obliged to incur in endeavoring to effect a cure, and for board and lodging during that time."

Upon its allowance of this amendment, the court permitted further testimony to be taken concerning the new matter which it introduced, and after the libelant had availed himself of this permission the learned judge reached the conclusion that the claim set up by the amendment should not be sustained. We think this conclusion was correct. In the case of the Osceola, 189 U. S. 175, 23 Sup. Ct. 483, 47 L. Ed. 760, it was held that the vessel and her owners are liable, in case a seaman is wounded in the service of the ship, "to the extent of his maintenance and cure and to his wages, at least so long as the voyage is continued." But if it be assumed that the liability in this instance continued after the completion of the voyage, yet the claim in question, as shown by the proofs, is not, as was alleged, for expenses which the libelant had incurred and might incur "in endeavoring to effect a cure, and for board and lodging during that time," but is for expenditures made by others on his behalf, which he is under no obligation to reimburse, and which were made when the cure had been completed, at least so far as the ordinary medical means extend. As was said by Mr. Justice Story in Reed v. Canfield, 1 Sumn. 202, Fed. Cas. No. 11,641:

"The seaman is to be cured at the expense of the ship of the sickness or injury sustained in the ship's service. It must be sustained by the party while in the ship's service; and he is not to receive any compensation or allowance for the effects of the injury. But so far, and so far only, as expenses

are incurred in the cure, whether they are of a medical or other nature, for diet, lodging, nursing, or other assistance, they are a charge on, and to be borne by, the ship. The sickness or other injury may occasion a temporary or permanent disability; but that is not a ground for indemnity from the owners. They are liable only for expenses necessarily incurred for the cure; and when the cure is completed, at least so far as the ordinary medical means extend, the owners are freed from all further liability. They are not in any just sense liable for consequential damages. The question, then, in all such cases is what expenses have been virtually incurred for the cure, not what might, under other circumstances, be incurred. The owner is not to respond for charity actually administered by others, but for expenses. He is not to pay what may remunerate the sufferer for his losses, or what in compassion or humanity he might demand; but what the law has measured out as the limit of justice."

The decree of the District Court is affirmed.