## WILLEY v. ALASKA PACKERS' ASS'N.

(Circuit Court of Appeals, Ninth Circuit. March 14, 1927.)

No. 4940.

1. Seamen ⊸11(9)—That seaman's death from tuberculosis resulted from exposure in course of employment, or owner's failure to furnish medical services, held not proved.

Evidence *held* not to establish that tuberculosis, causing seaman's death, resulted from exposure or cold contracted while in vessel owner's employ, or from such owner's failure to provide proper medicines or medical treatment and hospital service.

2. Seamen ⊸11(8)—Whether seaman should be sent to hospital without demand therefor depends on facts of particular case.

Whether seaman should be sent to hospital for treatment without his demand for such treatment must be determined on facts of particular case.

3. Seamen ⊸11(1)—Vessel owner held to have duty to furnish seamen with necessary medical attention and hospital service.

Where shipping articles provided that seamen engaged under contract should receive medical and surgical attendance and necessities, it was vessel owner's duty to furnish medicines, medical attention, and hospital service when necessary.

4. Evidence ⊸14—It is common knowledge that all persons have colds from time to time, for which medical treatment is not given.

It is common knowledge that all persons from time to time have colds from one cause or another, and that a physician is not called nor hospital treatment given therefor.

5. Seamen ⊸11(8)—It is not master's duty to send every seaman afflicted with cold to hospital, especially where seaman makes no such demand or representation of inability to work.

It is not the duty of a master to send to a hospital every seaman who is afflicted with a cold or cough, and whose physical appearance does not indicate that he is unable to perform his duty as a seaman, especially where seaman makes no representation that he is unable to work, nor requests hospital service or medical treatment, and whose only request is for medicine for cold or cough.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Suit by Charles W. Willey, as executor of the last will and testament of I. C. Kleepe, deceased, against the Alaska Packers' Association. Decree for defendant (9 F.[2d] 937), and libelant appeals. Affirmed.

H. W. Hutton, of San Francisco, Cal., for appellant.

Chickering & Gregory and Donald M. Gregory, all of San Francisco, Cal., for appellee.

Before RUDKIN, Circuit Judge, and SAWTELLE and JAMES, District Judges.

SAWTELLE, District Judge. Libelant alleges:

That he is the duly appointed executor of the last will and testament of I. C. Kleppe, deceased. That said Kleppe, at the time of his death, which occurred on April 10, 1924, in the city and county of San Francisco, Cal., was of the age of 35 years. That at all times mentioned in the complaint the respondent, Alaska Packers' Association, of California, was a corporation, having its office and principal place of business in said city and state, and was the owner and operator of a certain sailing ship, engaged in the merchant service of, and flying the flag of, the United States, called the Star of Finland.

That on the 3d day of April, 1922, said Kleppe was employed by the defendant, at San Francisco, to serve as mate on said vessel, Star of Finland, on a voyage from San Francisco, to a place called Alitak, in Alaska, and to return to San Francisco, and, while at Alitak to work as master of a small launch called the Goney, and in pursuance of said employment, said Kleppe signed shipping articles before the United States shipping commission for the port of San Francisco, Cal., and on the 4th day of April, 1922, went on board and into the service of the respondent under said contract of employment, on said Star of Finland. That said voyage terminated in San Francisco on or about the 29th day of September, 1922. That said Star of Finland arrived at Alitak on or about the 15th day of May, 1922, and there remained until about the 15th day of September, 1922, when she departed therefrom to San Francisco.

That between said dates of the arrival of said vessel at said Alitak and her departure therefrom Kleppe was engaged in canning salmon at Alitak, at a cannery situated in a bay, called Olga Bay, at which place there were no drug stores or doctors, or any means of access to drug stores or doctors, except by a voyage on some launch from Alitak; and that all launches at Alitak were owned and controlled by the defendant, and the use of none could be had without the permission of one Stindt, who was the agent in charge of the respondent's said business at Alitak during said year of 1922. That, upon the arrival of said Star of Finland at Alitak, said Kleppe took the position of master of the Goney, and continued as such master until about the 12th day of September, 1922, when he resumed his position on said Star of Finland, and returned to San Francisco.

That said Goney was used in carrying salmon from respondent's fish trap, about 25 miles distant, to its cannery. That said Kleppe was the engineer on said last-mentioned vessel. That on or about the 12th day of July, 1922, while said Kleppe was working on the Goney, he fell overboard into the water, getting wet, and thereby contracting a severe cold in his head. The weather being bad for the succeeding two or three days, he was subject to exposure, his cold became aggravated, and, growing worse, affected his throat and chest, finally developing into bronchitis, and later into tuberculosis, from which disease he died. That the said shipping articles provided that said Kleppe, "while engaged under this contract, shall receive medical and surgical attendance and medical and surgical necessities."

That, while said Kleppe was suffering from said cold at Alitak, defendant had no doctor in attendance there. That the nearest doctor was located at Larson Bay in Alaska, a distance of about 116 miles from said Alitak. That the only way to reach Larson Bay from Alitak was by going in a launch in the open sea, and that the trip required 19 hours. That the respondent never at any time furnished him with either medical or surgical attendance or medical or surgical necessities, by reason of which the said cold developed as aforesaid. That the death of said Kleppe was caused by the said negligence of the respondent.

Appellee admits the employment of Kleppe as alleged, but specifically denies in detail all of the other material allegations of the libel.

The case was submitted to the District Court upon the testimony taken in the superior court of the city and county of San Francisco, in the case of I. C. Kleppe v. Alaska Packers' Association, and upon the additional testimony of three witnesses examined before said District Court.

In the view which we have taken of the case, it will be necessary to consider but a single question, viz. the sufficiency of the evidence to sustain the libel.

[1] The testimony is conflicting, but, after a careful consideration of the entire case, we find the preponderance of the evidence establishes the following facts:

On April 3, 1922, at San Francisco, Cal., I. C. Kleppe, appellant's testator, entered into a contract with appellee, the Alaska Packers' Association, by the terms of which Kleppe was to serve as mate on appellee's vessel, Star of Finland, on a voyage to ap-

pellee's salmon cannery at Alitak, Alaska, and, while in Alaska, to act as master of the Goney, another one of appellee's vessels.

The shipping articles and contract provide: "All parties of the second part while engaged under this contract shall receive medical and surgical attendance and medical and surgical necessities."

The Star of Finland left San Francisco April 15, 1922, and arrived at Alitak, Alaska, on or about the 15th day of May, 1922. Kleppe, upon his arrival at Alitak, entered upon his duties as master of the Goney, which was used to convey fish from the fish traps to the cannery at Alitak, and continued in such duties until about the 12th day of September, 1922, when he resumed his position on said Star of Finland, and returned to San Francisco. Kleppe was in the employ of appellee at its said cannery during the years 1919, 1920, and 1921, and was master of the Goney in 1921 and 1922.

During the latter part of July, 1922, Kleppe, while engaged in the performance of his duties as master of the Goney, fell overboard, getting wet. Two weeks thereafter he ask the superintendent in charge at Alitak for medicine for a cough, and was given it. He made no further request of said superintendent for medicine. On one occasion Captain Weis of the Star of Finland heard him coughing, and suggested that he go aboard the said Star of Finland and get medicine. At the same time Captain Weis gave him the key to the room where the medicine chest was located, which chest was always open. Kleppe acted upon this suggestion. Kleppe made no further request for medicine, and never requested that he be given medical attention or hospital service. Kleppe, as he himself testified, did not consider himself in such a condition as to require the services of a physician or hospital service, and from his general appearance and his physical condition and the surrounding circumstances there was nothing to lead any reasonably prudent man, whether doctor or layman, to believe that he was in need of such service or attention. After the conversations between Kleppe and the superintendent in charge and Captain Weis, the former continued at his work until the end of the fishing season.

The appellee at all times maintained an ample and sufficient supply of medicine on the Star of Finland for the use of its employees, and a well-equipped hospital at Larson Bay, with physicians and nurses in constant attendance, where its employees were given free service.

The appellee maintained wireless communication between the stations at Alitak and Larson Bay, and the attendance of a physician at Alitak could have been secured within a reasonable time if the patient were too ill to make the trip from Alitak to Larson Bay.

The preponderance of the evidence shows that Kleppe had a cough prior to the year 1922. According to the testimony of the medical experts in the case, there is no possible way of determining how long he had been afflicted with tuberculosis prior to the time he entered the hospital in February, 1923, after he returned to San Francisco.

We further find that it has not been established by a preponderance of the evidence that Kleppe contracted or developed tuberculosis as a result of his getting wet at Alaska, while in the employ of the appellee, or that his death was caused by the cold which he contracted in Alaska in 1922, or by the failure of the appellee to provide proper medicines and/or medical treatment and attendance or hospital service.

[2] The appellant insists that Kleppe should have been sent to the hospital for treatment, regardless of the fact that he made no demand for such treatment, and in support of this proposition cites the case of The Iroquois, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed. 955.

The facts of that case and the one at bar are vastly different, and each case must be determined by its own facts. In that case the court said:

"To judge of the propriety of the master's conduct in a particular case we are bound, so far as possible, to put ourselves in his place, and inquire whether, in view of all the circumstances, he was bound to put into an intermediate port."

"The real question in the case is: Whether the master, knowing his ignorance of surgery, the serious nature of the libelant's injury, the poor accommodations for him in the forecastle, the liability of inflammation setting in, and of the bones not uniting, the fact that he was to be carried through the Tropics, where, to an invalid confined in the forecastle the heat would be almost intolerable, he should not, even at the sacrifice of a week, have put into Valparaiso and left the libelant there in charge of the American consul. Upon the other hand, libelant made no complaint of his treatment; did not ask to be taken into an intermediate port, and, so far as appears, the master did not know that the wound was not healing properly. The fact that the ribs had already united probably induced him to believe that the leg had also healed, although a careful examination could not have failed to

reveal the truth. We lay no stress upon the fact that the libelant did not ask to be taken into an intermediate port. He was a boy, largely ignorant of his rights and duties. The master was his legal guardian in the sense that it is a part of his duty to look out for the safety and care of his seamen, whether they make a distinct request for it or not."

As above stated, the libelant was a boy, largely ignorant of his rights and duties. This cannot be claimed for Kleppe. He was an experienced seaman, having been, according to his own testimony, a seafaring man for many years, and had worked for 3 or 4 years in the waters of Alaska. It cannot fairly be said that he was ignorant of his rights and duties. He knew there was a hospital at Larson Bay for care of the appellee's seamen; and that there were physicians in attendance there; that there was wireless communication between Alitak and Larson Bay; and that upon request he could have received special medical attention and hospital service.

The trouble was that neither he nor any one else believed there was any necessity for medical or hospital treatment for his cold. He told several of his fellow seamen that his cold did not amount to anything, and would be all right.

The evidence shows that nearly all of the men who were working in Alaska during the time he was there, in 1922, including Dr. Hartley himself, one of the appellee's physicians stationed at Larson Bay, had colds. We are not convinced from the evidence that the disease which caused Kleppe's death was brought about by, or the result of, any cold which he contracted while in Alaska.

[3] It is true that the appellee owed Kleppe, as well as all other seamen in its employ, a duty to furnish medicines and medical attention and hospital service when necessary; but we think this duty and obligation did not go to the extent which is urged upon us by counsel for the appellant.

[4] It is a matter of common knowledge that all of us from time to time have colds from one cause or another, and that we do not call a physician or go to a hospital therefor.

[5] The physicians who were called as experts in the case disagree as to whether there is any specific for an ordinary cold. Some of them contend that it must run its course, while others claim that, if taken in time, it can be cured; but the fact remains that a cold is rarely regarded as serious. Therefore we are not willing to hold that it is the duty of a master of a vessel to send every seaman to a hospital who is afflicted with a cold or a cough, and whose physical appearance does not indi-

cate that he is unable to continue to perform his duty as a seaman; and especially in cases where the seaman makes no representation that he is unable to work, makes no request for hospital service or for medical treatment, and whose only request is for medicine for a cold or cough.

We conclude, therefore, that the appellee was not careless or negligent in any of the respects set forth in the libel, and that the allegations therein contained have not been sustained.

The judgment of the District Court is affirmed.