**BURNS v. UNITED STATES et al.**

No. 91.

District Court, E. D. Pennsylvania.

Sept. 28, 1945.

Dorfman & Levitan, of Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, of Philadelphia, Pa., for respondents.

KALODNER, District Judge.

This action was instituted by libel in admiralty seeking maintenance and cure. Trial was by the Court without a jury. The facts subsequently stated were agreed to by stipulation.

A single question is presented:

Should maintenance and cure be allowed to a seaman who, at the time of his employment, failed to disclose a prior existing hernia, and whose incapacitation during the voyage was due solely to the fact that he "forgot to bring his truss along"?

In accordance with the stipulation and the exhibits annexed thereto, I make the following findings of fact:

1. The libellant, an experienced seaman, joined the S.S. Philip Livingston on April 15, 1943 at Philadelphia as a utility messman at $87.50 per month plus maintenance and war bonus.

2. The said libellant was paid off from the said vessel June 25, 1943 at Freemantle, Australia, for the purpose of securing medical or surgical care.

3. The S.S. Philip Livingston at all times herein mentioned was owned by the United States of America and was operated by the American-Hawaiian Steamship Company under a general agency agreement with the War Shipping Administration.

4. At the time of joining said vessel, libellant was suffering from a hernia which he had contracted while employed at the Philadelphia Navy Yard on January 30, 1943, as a shipfitter's helper. Claim for compensation under Section 39 of the Compensation Act of September 7, 1916, 5 U.S.C.A. § 789, was filed by the libellant on January 17, 1944 (some six months after the termination of his employment as a seaman) based on his injury while employed at the Philadelphia Navy Yard.

5. The libellant, upon joining the said vessel, forgot to take along a truss which he wore for his rupture during the voyage.

6. During the course of said voyage, libellant's hernia began to trouble him.

7. On June 25, 1943 the libellant made the following statement on a "Report of Ill-

ness" given to the Master of the S.S. Philip Livingston, said statement reading as follows: "In January I was working in the Philadelphia Navy Yard as a shipfitters Helper. My job was tightening bolts. I was given a truss and when I sailed I was awaiting an operation. I forgot to bring the truss on this voyage. I was ruptured in the Philadelphia Navy Yard sometime in January. The rupture began to bother me more while on this ship. I requested to see a doctor in Fremantle who examined me and I was payed off the ship on June 25, 1943."

8. The libellant performed his duties as a messman in a satisfactory manner from the time of joining the vessel until he was paid off on June 25, 1943.

9. Upon arrival of the said vessel in Fremantle, Australia, libellant was examined by Dr. F. H. Uther Baker, employed by R. G. Lynn, Ltd., agents for American-Hawaiian Steamship Company.

10. Libellant entered St. Helen's Hospital at Fremantle, Australia, on June 25, 1943 and was operated upon for his hernia on July 2, 1943. He left the said hospital July 24, 1943, and was thereafter treated as an outpatient at the said hospital until August 3, 1943, when he was discharged; all of which appears by reference to the report of Dr. F. H. Uther Baker, attending physician.

11. Libellant returned to the United States aboard the S.S. James Guthrie as a passenger arriving at the Port of New York on October 4, 1943.

12. The said S.S. Philip Livingston completed its voyage upon its arrival to the United States at the Port of New York on October 19, 1943.

13. If the said respondents are liable, it is agreed that libellant's damages amount to the sum of $529.45 as follows:

a. Wages—June 25, 1943 to October 5, 1943 or three months and twenty-four days @ $87.-50 per month .................. $291.70
b. War Bonus—August 24, 1943 to October 3, 1943 or forty-one days at $100.00 per month .... 136.53
c. Maintenance and Cure—July 24, 1943 to August 24, 1943 or thirty days at $2.75 per day .... 82.50
d. Overtime—As adjusted upon termination of voyage ........ 18.72
————
Total ............ $529.45

14. The said libellant departed this life January 14, 1945 from causes unconnected with this claim.

15. On February 23, 1945 letters of administration on the estate of the said libellant were issued by the register of wills of Philadelphia County to his widow, Phyllis Burns, who has been substituted as the libellant herein.

### Discussion

At the outset it may be stated that libellant rests his claim on the contention that a seaman who becomes ill while engaged in maritime employment is entitled to maintenance and cure and wages, at least until the termination of the voyage, under the doctrine of The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, and that the libellant's failure to bring along and wear his truss for his hernia condition was, at most, an act of negligence on his part, which could not adversely affect his right to maintenance and wages. Further, the libellant stresses that despite his hernia and his failure to wear a truss he was able to satisfactorily perform his duties on the vessel from the time of joining it on April 15, 1943 until he was paid off on June 25, 1943, in accordance with his desire to obtain surgical treatment.

Thus, the libellant contends that it was his labor on the vessel "acting on the hernia" which effected his incapacity. Additionally, libellant contends that under the decision in Neilson v. Laura, 17 Fed.Cas. pages 1305, 1306, No. 10,092, it was not necessary "that the sickness of the seaman should have originated during the voyage; it is only necessary that it occur during the voyage, without fault or misconduct on his part. * * *"

The respondents concede that where a seaman has a latent physical condition and is without reasonable ground to suspect its disabling effect during the voyage, he should be entitled to maintenance and cure and wages. However, the respondents contend that where a seaman has a condition which, as a reasonably prudent person, he knows, or should know, may result in disability during the intended voyage, he should not be entitled to recovery of maintenance.

The respondents urge that their contention is in accord with the principles stated in Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, and that under that decision the libellant here cannot recover. Libellant similarly insists

that under the Lindquist decision he is entitled to recovery.

After consideration of the arguments of counsel and analysis of the cases relied upon by both sides, particularly of the Lindquist case, I am of the opinion that the libellant cannot recover.

In The Bouker No. 2, 2 Cir., 1917, 241 F. 831, at page 833, the general rule was enunciated as follows: " * * * a seaman 'falls sick, or is wounded, in the service of the ship,' *if such misfortune attacks him* while he is attached to the ship as part of her crew. It is not necessary that the wound or illness should be directly caused by some proven act of labor; it is enough that he was, when incapacitated, subject to the call of duty as a seaman, and earning wages as such." (Emphasis supplied.)

Thus, in The Bouker case recovery was permitted to a libellant who contracted pneumonia during his employment. However, in the instant case the fact situation is different. Here misfortune did not attack the libellant while attached to the ship as part of her crew; it attacked him two and a half months before he became a member of the crew of the Philip Livingston.

Further, as stated by the libellant (paragraph 7 of Findings of Fact) he was "awaiting an operation" when he obtained his employment on the vessel. Thus, here the libellant was not only aware of his disability when he signed Articles, but was also cognizant of its seriousness and the fact that surgical treatment was necessary to effect a cure. He was also aware of the fact that it was necessary for him to wear a truss appliance to protect himself from further aggravation of his condition. Too, he must have known the disabling effect of his condition. In these respects the situation here is different than in Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, and in Lindquist v. Dilkes, supra. In the Calmar case recovery was permitted to a seaman incapacitated during the voyage from a prior existing disease of which he had no knowledge prior to joining the vessel. Similarly, in the Lindquist case recovery was allowed to a seaman who knew of a prior existing prostate condition but was found by the Trial Court to have considered his condition as an incident of advancing years and was without realization of its seriousness.

■ In my opinion the rule as stated in Lindquist v. Dilkes, supra, is dispositive of the issue here. Said the Court (page 24 of 127 F.2d): " * * * the sailor's duty is to disclose whatever he as an ordinarily prudent person should have known is material to the risk. * * * "

The Court came to this conclusion after an exhaustive review of related cases and the entire subject matter of maintenance and cure.

■ Applying the rule stated in Lindquist v. Dilkes, supra, I am of the opinion that since the libellant was fully aware of his disability and its gravity at the time he signed Articles, and failed to disclose his condition at the time, that he cannot recover in the instant case.

In view of the fact that there is an amount admittedly due of $18.72, constituting overtime due the libellant, which was not calculated until the end of the voyage, an award is made to him in this amount only and the claim for wages, bonus, maintenance and cure must be, and is hereby denied.