MURPHY v. AMERICAN BARGE LINE CO.

No. 9599.

Circuit Court of Appeals, Third Circuit.

Argued June 11, 1948.

Decided Aug. 2, 1948.

Writ of Certiorari Denied Nov. 8, 1948.

See 69 S.Ct. 133.

See also 76 F.Supp. 276.

Lucian Y. Ray, of Cleveland, Ohio (Alter, Wright & Barron, of Pittsburgh, Pa., and Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio, on the brief), for appellant.

Hymen Schlesinger, of Pittsburgh, Pa. (Schlesinger & Schlesinger, of Pittsburgh, Pa., on the brief), for appellee.

Before Biggs, Goodrich, and Kalodner, Circuit Judges.

GOODRICH, Circuit Judge.

The libellant, Otto J. Murphy, recovered judgment for maintenance and cure in an action brought in admiralty in the District Court for the Western District of Pennsylvania. The respondent, Murphy's former employer, attacks the correctness of the judgment on two grounds. One raises the question of the sufficiency of the evidence to establish the fact of the accident and injury; the second presents a question of law.

We find no difficulty with the fact question. The respondent does not seriously contest the fact that Murphy had a fall upon the deck of one of the barges being towed by it on the night of December 1, 1946. The mate who testified for the respondent said he did not see Murphy fall, but did see him get up. Respondent presses the point that the evidence is insufficient to support a finding that Murphy suffered the back injuries he claimed to have sustained. There is some conflict in the testimony, as is usual in such cases. But both the libellant's story and the medical testimony are entirely sufficient to establish the case for the libellant and the Trial Judge found in his favor. Respondent has made an appeal to common knowledge with regard to what happens to people who suffer back injuries of the type claimed here. We do not agree with the generalization made but, in any event, we think that it would be foolish of us to substitute any notions we have on this subject for the medical testi-

mony which is in the case. That testimony need not be recited. It is credible, it convinced the Trial Judge, and we are satisfied with the conclusion reached.

The legal point is exceedingly interesting and some phases of it are novel. Murphy was discharged from the ship's service shortly after the accident. At the time of his discharge he was given a slip, or ticket, by the ship's officer which entitled him to receive medical treatment at a Marine Hospital. He went to the United States Public Health Service Relief Station at Gallipolis, Ohio, four miles from his home at Henderson, West Virginia. The first visit was the day after his discharge, but no one was there to give him service. When he returned nine days later the physician in charge made an external examination, but took no X-ray pictures. He strapped Murphy's back with adhesive tape. Murphy went back again for further consultation and on this occasion the physician advised him to go to the United States Marine Hospital at Pittsburgh, Pennsylvania, telling Murphy that he had done all that he could do for him at Gallipolis. The doctor gave to Murphy at that time a written ticket, or order, which the physician assured Murphy would entitle him to admission to this hospital. Murphy objected to the trip because he said that the pain in his back was too great. He came back at another time to the same physician at Gallipolis and was given the same advice and made the same reply. It appears that there is a Marine Ward in the hospital at Gallipolis, where the doctor's office was situated, but it does not appear why Murphy was not offered treatment in this hospital.

The respondent says that Murphy is not entitled to any award for maintenance due to his failure to go from Gallipolis to the Marine Hospital in Pittsburgh. It says that this failure amounted to a refusal of treatment and that a seaman who refuses treatment is not entitled to an allowance for maintenance and cure.

Decisions hold that an offer of hospital services is a fulfilment of the shipowner's obligation to furnish maintenance and cure to an injured seaman. The Bouker No. 2, 2 Cir., 1917, 241 F. 831; United States v. Loyola, 9 Cir., 1947, 161 F.2d 126; June v. Pan-American Petroleum & Transport Co., 5 Cir., 1928, 25 F.2d 457, 458.

For the purpose of the discussion here we accept the rule of law there announced and applied. It is a logical application of the principles controlling the claim litigated here. When we speak of maintenance and cure in the admiralty law we really mean maintenance and care because, of course, the employer is not held at his peril to effect a cure. Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, certiorari denied 1941, 313 U.S. 577, 61 S. Ct. 1104, 85 L.Ed. 1535; Calmor S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993. Hospitalization affords both maintenance and medical care and, therefore, while receiving it, the seaman is having the relief he is entitled to furnished in kind instead of being paid for its cost. We suppose that it would be the same thing if the shipowner maintained an establishment for the benefit of seamen where they could receive maintenance and such care as they needed without having to pay out their own funds therefor.[1] Furthermore, we think that there is no burden on the shipowner to show that such hospitalization would have cured the injury which the seaman suffered in the service of the ship. As pointed out, the duty of maintenance and care is being performed in specie during hospitalization and the recommendation of an attending physician that the man be hospitalized is an expert judgment which makes the offer of hospitalization proper.

[1] That the obligation is to reimburse the seaman only for money actually paid out by him is illustrated by United States v. Johnson, 9 Cir., 1947, 160 F.2d 789. In that case the seaman was refused recovery for the period he spent with his parents since under the law of California a minor had no duty to reimburse his parents for expenses incurred in providing him board and lodging. The court's holding on maintenance and cure was affirmed in Johnson v. United States, 1948, 333 U.S. 46, 68 S.Ct. 391.

■ Cases have held that the patient's disinclination and refusal for further hospital treatment is not sufficient to put the burden upon the shipowner and with this we agree. United States v. Johnson, 9 Cir., 1947, 160 F.2d 789, affirmed on this point in 1948, 333 U.S. 46, 68 S.Ct. 391; The Saguache, 2 Cir., 1940, 112 F.2d 482. Nor, do we think, the fact that the treatment itself would cause one some acute physical discomfort, or going to get treatment might involve a journey involving discomfort, is a legal excuse for not accepting the medical treatment proffered. We have an analogy here in cases where people have sought to recover for personal injuries which could have been avoided had they followed competent medical advice and had a certain kind of treatment. The authorities are uniform that, except in cases involving grave and severe operations, one must follow the expert recommendation of physicians or to be precluded from recovering damages which might have been avoided thereby. See Restatement, Torts § 918 (1939) Comment: d. Pain-danger.

If that is all there were to this case we would be inclined to cut off libellant's recovery for maintenance at the point where he refused to go to Pittsburgh for hospitalization. But there was another fact involved which we think prevents the point above discussed from determining the case. This man was not told to come in to a hospital in Gallipolis for treatment; he was told to take a trip of something between 200 and 300 miles to get that treatment. There is no word in the evidence as to the means by which he was expected to get there, or who would reimburse him for the money spent to travel.

■ It is worthwhile reminding ourselves of the orthodox rule that seamen are wards of the admiralty. The employer also occupies a position of guardianship, at least in the instance where the injury occurred on board the ship and he was aware of it before the seaman left the ship. Cortes v. Baltimore Insular Line, Inc., 1932, 287 U.S. 367, 374-377, 53 S.Ct. 173, 77 L.Ed. 368. The record shows that this libellant was in his fifties; had a family of five children; had been discharged from his job in December and a month later was, on the evidence presented for him, in very considerable physical distress. It is to be remembered that this duty of maintenance and cure is an affirmative one. Affirmative obligations in the law are comparatively few and are confined, for the most part, to relationships among a family unit. But this duty on the part of the master to care for the seaman is one of the oldest and most conspicuous in the law of affirmative obligations. See Bohlen, The Moral Duty to Aid Others as a Basis of Tort Liability, 56 U. of Pa.L.Rev. 217, 236-241 (1908); Note 57 Yale L.J. 243, 247-250 (1947). If hospitalization was the way in which the obligation of maintenance and cure was to be fulfilled, this would mean, we think, that there was a duty to provide means to get the man there. He was no longer an employee of the respondent, it is true, but the duty of maintenance and cure did not stop with his discharge. Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, certiorari denied 1941, 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535. A hospital ticket without more under these circumstances does not discharge the obligation since we think the instant case represents a situation where the offer to provide hospitalization must include the means by which the injured seaman can get to the hospitalization suggested. We are not dealing here with the question of avoidable consequences as mitigation of damages in common law actions of tort.

We thus agree with the conclusion reached by the learned District Judge, although the conclusion is put on a somewhat different ground.

The judgment will be affirmed.