## POTTER TITLE & TRUST CO. v. OHIO BARGE LINE, Inc.
### Civil Action No. 5129.

United States District Court
W. D. Pennsylvania.

Nov. 4, 1948.

Hymen Schlesinger, of Pittsburgh, Pa., for plaintiff.

Ira R. Hill, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

Joseph Engel was a seaman in the employ of the defendant from November 10, 1944, to January 7, 1945, in the capacity of steward and cook on the vessel of defendant named "City of Pittsburgh." During said time this vessel made a trip from Pittsburgh to New Orleans and return. He entered a Marine Hospital at Pittsburgh on January 19, 1945. He died February 21, 1945.

Engel's death was contributed to and aggravated by lack of proper medical care and service and the character and amount of work required of him as a steward and cook.

This action under the Jones Act by the Administrator of his estate is to recover damages based, inter alia, upon the negligence of the defendant in failing to furnish him with proper medical service and care during the time of his employment and requiring him to do work of character and in an amount which he was unable to do. I am of the opinion that the death of Joseph Engel was aggravated by and contributed to by the negligence of the defendant in failing to furnish him with proper medical care and treatment and also by the character and the amount of work which he was required to do.

The Captain of the "City of Pittsburgh" knew that Joseph Engel was in the Marine Hospital in September and October, 1944, about a month before entering into defendant's employment. He knew that Engel had shortness of breath and hardness or difficulty in breathing. He knew of the long hours of work of Engel each day on the vessel and the character and amount of the work performed by Engel. He knew of the atmospheric condition during the trip. The Captain's knowledge of the facts was sufficient to impose on defendant the duty of providing competent medical service and care, also to furnish work · in kind and amount suitable to his condition. This defendant failed to do, therefore, it was guilty of negligence. See. Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368; Murphy v. American Barge Line Co., 3 Cir., 169 F.2d 61; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239.

■ Joseph Engel was guilty of contributory negligence. He knew of his prior heat stroke, of his difficulty in breathing, his shortness of breath, how his ability to labor had been affected during several years before entering into the employment of the defendant. He knew of his hospitalization during the preceding years, the last being about a month before entering into the employment of the defendant. With this knowledge, as well as the knowledge of other facts, he entered into defendant's employment and remained therein without medical care or service and engaged in work of a character and amount which he must have known he was not capable of doing.

■ I am of the opinion that Joseph Engel and the defendant were guilty of negligence in equal shares which contributed to and aggravated Engel's death.

Let an order be prepared and submitted for judgment in favor of the plaintiff and against the defendant in the amount of $4,000 with costs in the action under the Jones Act and for judgment for the defendant on the claim for maintenance and cure.

Findings of Fact and Conclusions of Law.

This is an action by the Administrator of a deceased seaman against the Ohio Barge Line, Inc., under the admiralty laws for maintenance and cure and also for damages based on negligence under the Merchant Marine Act of 1920. The parties have stipulated that judgment should be entered in favor of the defendant as to the claim for maintenance and cure. On the action under the Jones Act based on negligence, the Court makes the following Findings of Fact and Conclusions of Law:

Findings of Fact.

1. Complainant, Potter Title and Trust Company, is a corporation engaged in the General banking and trust business, having its office at the corner of Fourth Avenue and Grant Street, Pittsburgh, Pennsylvania, and at No. 4517 of 1945 was appointed administrator of the Estate of Joseph Engel, deceased.

2. Respondent, Ohio Barge Line, Inc., is a corporation engaged in the business of marine transportation as a common carrier upon the navigable waters of the Mississippi and Ohio Rivers and their tributaries, having an office for the general transaction of its business at Grant Building, Pittsburgh, Pennsylvania.

3. The defendant is the owner and operator of a certain steamship, "The City of Pittsburgh," engaged in interstate commerce as a common carrier upon the navigable waters of the United States.

4. That on or about November 15, 1944, this plaintiff's decedent, Joseph Engel, left the city of Pittsburgh upon a certain trip as a seaman in the service and employ of this respondent, he being signed to duty upon the said steamship, "City of Pittsburgh," said trip and engagement being for a certain tour of duty which extended from November, 1944, until the date of January 7, 1945, and that during the course of said trip or tour of duty, said steamship "City of Pittsburgh" made various and sundry calls at various ports upon the navigable waters of the Ohio and Mississippi Rivers and their tributaries, between Pittsburgh, Pennsylvania, and New Orleans, Louisiana, both en route from Pittsburgh, Pennsylvania to New Orleans, Louisiana and return.

5. Frank J. Hibstenberg was master and captain of the steamer, "City of Pittsburgh," owned and operated by defendant in navigation on the Ohio and Mississippi Rivers during the voyage from Pittsburgh to New Orleans and return from about November 3, 1944 to January 7, 1945.

6. Joseph Engel was a seaman employed on said vessel as a member of the crew in the capacity of steward and cook.

7. Captain Hibstenberg met said Engel for the first time in October, 1944, while both the Captain and Engel were resident patients in the Marine Hospital at Pittsburgh, Pennsylvania.

8. On or about November 10, 1944, the Captain employed Engel and had full discretion and authority on behalf of defendant in filling a crew on said vessel.

9. At the time he hired Engel, the Captain did not obtain a doctor's certificate or a hospital certificate from the Marine Hospital as to Engel's condition nor did the Captain cause said Engel to have any

medical examination by a physician as a condition of employment, nor did the Captain ask for or receive information as to Engel's condition.

10. The duties of Engel as steward and cook on the vessel consisted among other things in cooking and baking, peeling potatoes, frying and generally preparing food for the meals of the crew of 26 persons or more on said vessel during the voyage for three meals each day. In performing said duties Joseph Engel was assisted by a cook and three maids all of whom helped to prepare and serve the meals to the members of the crew.

11. Said Engel worked in the galley each day during the voyage.

12. The Captain noticed that Engel, although working at every meal, acted like he was short of breath and "used to breathe hard."

13. Engel performed his duties in every respect and did not miss even an hour of his work during the entire voyage.

14. Engel spent the majority of his time in the kitchen and bakeshop. In the kitchen he supervised the meals, cooked for the crew and was in attendance at all times during the preparation of the meal. While baking was being done in the bakeshop, he was supervising and doing some baking himself, and was in attendance at all times.

15. The weather was changeable and winter conditions of cold, dampness and fog were encountered during the voyage.

16. Engel could and did go frequently from the kitchen or bakeshop onto the outer deck where all the climatic and weather changes occurred.

17. At the time Engel was discharged from the hospital in October, 1944 he was certified as improved but not yet fit for duty.

18. Engel's condition, upon his discharge from the Marine Hospital in October, 1944 was such that he was capable of making a physical adjustment and probably would have been enabled to carry on a gainful, useful life for a long period of time or for a reasonable span of life if he did not overexert himself.

19. Engel's condition became aggrevated on the steamer "City of Pittsburgh" by virtue of the arduous duties and work performed by him and because of climatic and changeable weather conditions of fog, dampness and cold during the winter season.

20. When Engel returned from the voyage on January 7, 1945, he went to his home and went to bed because of illness. His condition gradually deteriorated and worsened to such an extent that he was compelled to be hospitalized on January 19, 1945 at the Marine Hospital in Pittsburgh, where he died on February 21, 1945.

21. The increment of load upon Engel because of the work on the vessel lead to, or contributed to, his death on February 21, 1945.

22. Joseph Engel is survived by Emma P. Engel, his widow to whom he was married on April 11, 1942. She was 49 years old and he was 52 years of age at the time of his death.

23. Joseph Engel could have and probably would have lived for a period of 8 to 10 years following his discharge from the Marine Hospital in October, 1944, and during such period of years would have been able to carry on a gainful, useful life.

24. Engel contributed to the support of his wife during the three years preceding his death the sum of $3,000.

25. Engel's illness was such that he was physically unable to perform the duties and work of a steward and cook to which he was assigned by the Captain and, under the circumstances, the Captain was chargeable with notice and knowledge of such fact.

26. The Captain, seeing that Engel was ill on the vessel and being chargeable with notice and knowledge of such fact, failed to exercise proper and due care under the circumstances. He failed to relieve Engel of his arduous duties, failed to provide proper care, and medical attention under the circumstances, as a result of which neglect by the Captain, Engel's illness became aggravated and his death ensued.

27. When the vessel "City of Pittsburgh" arrived back in Pittsburgh on January 7, 1945, Joseph Engel bade the members of the crew goodbye, told Captain Hibstenberg that if he later needed another cook,

he would gladly go along. He then picked up his suitcase and walked off the vessel.

28. On January 19, 1945, Joseph Engel, on the advice of Dr. McGarvey of Bridgeville, Pennsylvania, was taken to the Marine Hospital at Pittsburgh, Pennsylvania. At that time his condition was "Emphysema of lobes of both lungs and severe tracheabronchitis, generalized." On admission, he gave a history of having severe coughing attacks and general weakness for approximately one week prior thereto. Joseph Engel was confined in the Marine Hospital until February 21, 1945, when he died. The medical records of the Marine Hospital show the cause of death to be: "Immediate cause, Emphysema, generalized, severe, two years; other causes Superative Tracheabronchitis, generalized." An autopsy of decedent's body was performed on February 21, 1945 at the Marine Hospital, Pittsburgh, Pennsylvania.

29. Joseph Engel was married to his wife, Emma Engel, on April 11, 1942, who, at the time was 49 years of age. He was born on January 3, 1893. Prior to his marriage, Engel had been employed as a cook or steward on various boats and was afflicted with "asthma." A couple of weeks following his marriage, Engel left on a voyage and was gone until February, 1943. During that voyage, he suffered with heat exhaustion or heat stroke, which left him groggy at times. From April 1943 until August, 1943, he was employed as a welder at Universal Cyclop Steel Company, Bridgeville, Pennsylvania, where he became sick and was sent to St. Francis Hospital for treatment.

30. Engel was confined at the St. Francis Hospital, Pittsburgh, Pennsylvania from August 27, 1943 until September 11, 1943 under the care of Dr. R. R. Clark. When admitted, he was found to have arteriosclerotic heart disease, emphysema, chronic bronchitis and myocarditis and he gave a history of having suffered a heat stroke in the Persian Gulf one year and a half previously which hospitalized him for thirty-five to forty days and which hospitalized him for one month following his return to New York. On September 11, 1943 he was discharged from St. Francis Hospital and was advised to go home for a period of rest and then find some type of work which would require as small amount of exertion as possible.

31. In October, 1943, Engel again hired out as a steward or cook on a vessel bound for Sicily, not returning until May, 1944. Upon arriving from Sicily he was confined to a hospital in Norfolk, Virginia until September, 1944. While returning to Pittsburgh on the train, he became sick and he was taken to the Marine Hospital, Pittsburgh, Pennsylvania, where he was admitted on September 7, 1944. His diagnosis at the Marine Hospital, Pittsburgh, Pennsylvania, was "Asthma, bronchial, myocardial damage." On October 9, 1944, Engel was discharged from said hospital as not yet fit for duty but to report later for outpatient treatment.

32. During the entire trip to New Orleans and return, Engel never complained of being ill, never asked for medical treatment, but performed his duties of steward everyday without complaint.

33. Joseph Engel did not make known to the defendant his physical condition before or during his employment, or that he was not able to do the work which he was doing. He was guilty of contributory negligence. The amount of such negligence chargeable to him was one-half of the total negligence in this case.

34. The total damages suffered by the plaintiff in this case is $8,000, one-half thereof is chargeable to Joseph Engel by reason of his contributory negligence.

### Conclusions of Law.

1. This Court has jurisdiction over the parties and the subject matter involved under the provisions of the Merchant Marine Act of 1920, Section 33, commonly referred to as the Jones Act, 46 U.S.C.A. § 688.

2. The defendant was under a duty after Engel's employment to safeguard his health, to relieve him from duties, which by reason of his physical condition, he was not able to do and to furnish him with medical care. Defendant, not having done so, has breached its duty which it owed to Engel in this respect.

3. The defendant is guilty of negligence in the breach of its duty to Engel and such negligence approximately caused an aggra-

vation of his illness which resulted in his death.

4. Joseph Engel was guilty of contributory negligence which contributed to his death and this negligence was one-half of the total negligence in this case.

5. Judgment should be entered for the plaintiff in the amount of $4,000 with costs.

6. Judgment on the claim for maintenance and cure should be entered in favor of the defendant as per stipulation of the parties.