**POTTER TITLE & TRUST CO. v. OHIO BARGE LINE, Inc.**

**Appeal of OHIO BARGE LINE, Inc.**
**Appeal of POTTER TITLE & TRUST CO.**

Nos. 9896, 9919.

United States Court of Appeals
Third Circuit.

Argued June 17, 1949.

Reargued Oct. 4, 1949.

Decided Dec. 22, 1949.

Reargued Oct. 3, 1950.

Decided Oct. 10, 1950.

Biggs, Chief Judge, and McLaughlin and Staley, Circuit Judges, dissented.

Hymen Schlesinger, Pittsburgh, Pa., for Potter Title & Trust Co.

Ira R. Hill, Pittsburgh Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for Ohio Barge Line, Inc.

Before BIGGS, Chief Judge, and MARIS, McLAUGHLIN, O'CONNELL and KALODNER, Circuit Judges.

PER CURIAM.

Five judges sat in the court in banc at the reargument of this case. Three of them, Judges MARIS, O'CONNELL and KALODNER, were of the view that the district court erred in not entering judgment for the defendant and they voted in conference to reverse the judgment which the district court entered for the plaintiff. Their views are set out in the opinion which Judge O'CONNELL had prepared before his death and which the court now orders to be filed. Chief Judge BIGGS and Judge McLAUGHLIN were of the view that the judgment which the district court entered for the plaintiff was right and they voted in conference to affirm it. Their views are set out in the dissenting opinion which Chief Judge BIGGS is filing today and they adhere to these views. Nonetheless, since a majority of the judges who heard and considered this case voted in conference to reverse, all four surviving judges now join in directing the entry of a judgment by this court reversing the judgment of the district court and remanding the cause with directions to enter a judgment in favor of the defendant.

Opinion prepared by O'CONNELL, Circuit Judge.

Joseph Engel died shortly after he completed a voyage as steward on the S. S. "City of Pittsburgh," a vessel owned by defendant. The complaint filed by plaintiff, administrator of Engel, sought recovery of maintenance and cure and also damages under the Jones Act, 46 U.S.C.A. § 688. Subsequently, however, plaintiff stipulated, and the court ordered, that judgment be entered in favor of defendant as to the maintenance and cure claims. The liability of defendant to plaintiff, therefore, can here be predicated only upon negligence, i. e., a failure by defendant to observe the degree of care required under the circumstances. A brief review of the facts is desirable.

In October of 1944, while he was an ambulant resident patient [1] at the Marine Hospital at Pittsburgh, Pa., Engel first met one Frank J. Hibstenberg. Learning at some point during three casual dining-room conversations that Hibstenberg was captain of the "City of Pittsburgh," Engel expressed the desire to work for him if Hibstenberg ever needed help. Without contradiction, Captain Hibstenberg testified that he had no personal knowledge of Engel's physical condition.

Later that month, both men were discharged from the hospital. During the following month, Hibstenberg by telephone to Engel at his home in Clairton, Pa., offered him the job as steward on the "City of Pittsburgh." Engel accepted. As far as the record reveals, information concerning

---

1. The diagnosis of his ailment was "asthma, bronchial, myocardial damage."

the state of health of Engel was neither solicited by Hibstenberg nor volunteered by Engel at any time during this conversation or prior to Engel's departure with the vessel. We do have an indication, in the duplicate copy of Engel's certificate of discharge from the hospital, that in fact Engel was not fit for unlimited duty when he undertook to make this voyage; but Hibstenberg denied ever seeing the certificate, and further that there existed any custom of requiring production of such certificate prior to employment.[2]

Although defendant has strongly urged to the contrary, both in the court below and before us, we may assume that Engel's duties of supervising and assisting in the preparation of meals for the 26 members of the crew were more arduous than would have been approved by the doctors who discharged him from the hospital. This much is nevertheless clear: at no time during the months Engel was employed on this vessel did he complain, ask to be relieved, or absent himself from work. Here too we note the uncontroverted testimony of Hibstenberg to the effect that he had no personal knowledge that Engel's physical condition was too poor to withstand the demands of the duties as steward on that voyage, in the weather conditions to be expected between November and early January.

Upon leaving the vessel, not only did Engel make no reference to his health and refrain from asking for a hospital slip, but also he expressed his willingness to serve under Hibstenberg again. Within two weeks after his return from the trip, however, Engel was so ill that he was compelled to be hospitalized again; and, about one month thereafter, he died. According to the certificate of death, also a part of the original hospital records, the immediate cause of his death was "Emphysema, generalized, severe" of two years' duration,

with other conditions specified as "Suppurative Tracheobronchitis, generalized." We need not question the finding of the trial judge that the work Engel performed on the vessel not only caused deterioration of his health but also contributed to the shortening of his life.

By stipulation, the case was tried to the court without a jury as a civil action. Finding the facts substantially as stated above, the district judge held defendant to be guilty of negligence and Engel of contributory negligence; accordingly, the $8000 total damages which the court below found plaintiff to have suffered by virtue of Engel's misfortunes was halved, and the recovery of $4000 ordered. Both litigants have appealed.

The opinion of the court below, reported at D.C.W.D.Pa.1948, 81 F.Supp. 108 indicates that the primary basis for the judge's conclusion that defendant had been negligent was the failure of Hibstenberg to relieve Engel of duties which overtaxed his system and the failure to furnish him with proper medical care. There is a further implication, moreover, that Hibstenberg fell below the minimum permissible standard of care when, without first obtaining a medical certificate or requiring Engel to take a physical examination, he hired Engel.

In the first place, it is not inapposite to stress that we have before us no claim for maintenance and cure. Such cases as Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107, and Lindquist v. Dilkes, 3 Cir., 1942, 127 F.2d 21, relieve us of the necessity of here reviewing and reiterating the principles, and reasons therefor, whereby shipowners, even regardless of fault, may be held responsible for maintenance and cure of seamen in their employ. Thus, it may well be that the Ohio Barge Line (defendant) would have incurred liability for maintenance and cure (i. e., care) of Engel simply because

2. In producing the duplicate certificate, plaintiff sought to induce the inference that the original had been given Hibstenberg; but, at the conclusion of the trial, plaintiff stipulated that there was no evidence that the original certificate, the whereabouts of which was unknown, was ever delivered to or received by either Engel or defendant. Such certificates

would be given to discharged patients who requested them.

The duplicate certificate, which was prepared by the Marine Hospital, is not a part of the record on appeal as designated by the parties. This and the other available hospital records concerning Engel, however, were in the custody of the clerk of the district court.

the boat duties worsened his physical condition, even if concededly reasonable precautions had been taken in hiring and working him.[3] That is not this case. To prevail here, plaintiff must have introduced evidence establishing that the hiring of Engel was accomplished in a negligent manner, or that under the circumstances it was negligent of Hibstenberg to permit Engel to continue working on that trip. Both bases must be subjected to careful examination, as we disagree with the result reached in the court below.

1. The hiring of Engel.

■ We know of no statute or judicial decision which places an affirmative duty upon a private maritime employer to require the seamen he hires to take a physical examination before embarking. In fact, the cases which we have examined point strongly to the conclusion that the employer is entitled to believe every seaman he hires to be in proper physical condition for the job the seaman is to fill during the trip.[4] It may well be that it would be socially desirable to insist upon the physical examination of all seamen before they are hired, just as is done for prospective members of the armed forces of the United States; it is also quite possible that it would be economically sound practice for maritime employers voluntarily to require such preliminary physical qualification, and

thereby increase efficiency and lower costs of maintenance and cure; as to this, we express no opinion, however, for it seems to us that the legislative branch of our government is charged with the power and responsibility of determining whether such a requirement should be created. If that obligation is to be placed upon the employer, the appropriate means is by legislative action and not by judicial fiat.[5]

■ Since defendant, therefore, had no general duty to satisfy itself of the physical competence of the crew which was to operate the "City of Pittsburgh," negligence of defendant in hiring Engel would have to rest upon special circumstances warranting the carving out of an exception to the general rule. It is true that Hibstenberg met Engel as a fellow-patient in a hospital. Is this, in and of itself, sufficient to impute to Hibstenberg notice that Engel might be suffering from an illness which the voyage was likely to render more acute? We think not. Since Engel was an ambulant patient when Hibstenberg met him;[6] since Engel had been discharged from the hospital when the job was offered; and since Engel had himself requested those duties and did accept the assignment, we believe Hibstenberg was justified in assuming that Engel had no physical impairment which made the projected trip inadvisable for Engel. If Hibstenberg, without personal

3. That even maintenance and cure is sometimes denied seamen who conceal pre-existing illness is recognized in Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. Cf. 4 Benedict on Admiralty, 6th ed. § 627, page 296.

4. Lindquist v. Dilkes, 3 Cir., 1942, 127 F. 2d 21, cites and discusses a number of these cases: Peterson v. United States, D.C.W.D.Wash.1928, 27 F.2d 182; Writer v. The Richmond, D.C.Pa.1807, 30 Fed.Cas. 718, Case No. 18,104; Chandler v. The Annie Buckman, D.C.S.D. N.Y. 1853, 5 Fed.Cas. 449, No. 2591a; The Mary Sanford, D.C.E.D.S.C. 1893, 58 F. 926; and The Sarmatia, D.C.S.D.N.Y.1927, (5) A.M.C. 925. For the purposes of this discussion, we need not concern ourselves with the question whether the seaman warrants his physical condition to be satisfactory. It is sufficient to note that none of these courts affixed liability against shipowners because

they had not informed themselves of the ailments of the seamen involved, and that it is not unlikely that a medical examination would have exposed at least some of the maladies. See also Tawada v. United States, 9 Cir., 1947, 162 F.2d 615, 617, Burns v. United States, D.C.E.D.Pa.1945, 62 F.Supp. 603, and Sanz v. Isbrandtsen Co., S.Ct.N.Y.County 1949, 196 Misc. 390, 88 N.Y.S.2d 486.

5. We note that plaintiff in Lindquist v. Dilkes, 3 Cir., 1942, 127 F.2d 21, originally sought recovery for negligence as well, but withdrew that claim at the close of his case, when the evidence disclosed that his urinary ailment long antedated the voyage, although he was not asked about his physical condition when he was signed on.

6. The hospital records for this period indicate that Engel was not then in serious condition. His wife testified that his condition was "pretty good" when he returned from the hospital in October, 1944.

knowledge of Engel's difficulties, were considered to have been remiss in failing to make further inquiries simply because he was aware that Engel had been in a hospital for undisclosed reasons, there would be few cases indeed where equally frail bits of information could not be construed as notice requiring affirmative steps; and indirectly and without specific legislative approval, the pre-employment medical examination or certification would become a prerequisite to due care.

■ Unquestionably, a master does have paternal responsibilities to his crew. It is equally obvious that such obligations are not involved in the hiring of seamen, as the duties akin to guardianship come into being only after the employment has begun. Plaintiff here cannot prove negligence in hiring by relying upon the principle that the seaman is the ward of admiralty. In the absence of legislation, we do not believe the paternal responsibilities of a captain include that of requiring medical approval before hiring an apparently competent but previously-hospitalized seaman who is seeking, and accepts, employment.[7]

2. The failure to relieve and treat Engel on board.

■ Plaintiff has not contended that defendant was under a legal duty to furnish a doctor or nurse to the crew of the "City of Pittsburgh." Indeed, this court has indicated that no such requirement exists for a vessel of this type, see The Kenilworth, 3 Cir., 1906, 144 F. 376, 4 L.R.A., N.S., 49, 7 Ann.Cas. 202; and see The Wensleydale, D.C.E.D.N.Y.1890, 41 F. 602, at pages 602-603. It necessarily follows that the master of the ship cannot be, and

is not, expected to exercise the skill of a physician in recognizing the ailments of his crewmen and rendering suitable treatment therefore. See The Kenilworth, supra, 144 F. at page 378, and Willey v. Alaska Packers' Ass'n, 9 Cir., 1927, 18 F. 2d 8, 11.[8]

■ Hibstenberg had no actual knowledge that Engel was in serious straits, nor had he ever employed Engel in the past. The only question, then, as we discussed in connection with the hiring of Engel, is whether Hibstenberg may fairly be said to have had notice of the same, i. e., whether the difficulties of Engel would have been perceived by a reasonably prudent master. Summarized, the only incidents which plaintiff can urge are (1) Engel was a hospital patient when Hibstenberg met him, (2) at one point during the voyage, Engel mentioned that he had been a victim of heat in the Indian Ocean and Persian Gulf,[9] and (3) Hibstenberg noticed that Engel "acted like he was short of breath and 'used to breathe hard.'" We need not labor the point that these hardly constitute adequate notice. It must be realized that Engel himself sought the position; that he had assistance in performing his duties; that he did not miss an hour of work; that he never complained at any time to anybody, even when he debarked, and never sought medical attention or requested a hospital slip while he was on the boat; that he betrayed no signs of illness, and his fellow crew-members saw nothing untoward. We think that Hibstenberg, under these circumstances, was not negligent in permitting Engel to continue to perform his duties without special attention. Engel was a mature and experienced man, whose outward signs of disability we deem entire-

---

7. We deem it not inapposite to point out that, in stressing that Engel was apparently competent and satisfied with his job, we are not thinking in terms of negligence and contributory negligence. Rather, we believe the behavior of Engel constituted an affirmative representation to defendant, upon which defendant could and did rely.

8. Although one of the earliest cases of this circuit pointed out the undesirability of having seamen administer self-medication and pay for their medical advice, Walton v. The Neptune, D.C.Pa.1800, 29

Fed.Cas. 142, 145, No. 17,135, we know of no significant statutory change as a result thereof. Cf. Zambrano v. Moore-McCormack Lines, 2 Cir., 1942, 131 F.2d 537, 539; and cf. The Gentleman, C.C. S.D.N.Y.1846, 10 Fed.Cas.188, No. 5,323.

9. Plaintiff thinks this comment may have been made by Engel in the hospital before the voyage was made. Although the record is not clear beyond dispute, we believe the interpretation to be more reasonable which attributes the remark to Engel during the voyage.

ly too obscure to dictate to a reasonably prudent master that, sua sponte, he relieve his uncomplaining steward. Cf. Willey v. Alaska Packers' Ass'n, supra.

In view of these conclusions, it is unnecessary to pass upon the other issues on appeal. Since negligence of defendant was not proved, judgment should have been in favor of defendant. The judgment of the district court must accordingly be reversed.

BIGGS, Chief Judge (dissenting).

The record does not support the majority decision that the Ohio Barge Line, Inc. was not guilty of negligence. The conclusion of the court below that Ohio Barge Line, Inc. was guilty of negligence was correct.

Captain Hibstenberg, the captain of the S.S. "City of Pittsburgh", was in the Marine Hospital at Pittsburgh at the same time as was Engel and saw him there. Engel's condition was a serious one, though he was an ambulatory patient. After Engel's discharge from the hospital he talked to Hibstenberg and induced the latter to employ him as steward on the "Pittsburgh". The hospital record shows that Engel was an asthmatic and suffered several severe attacks of cardiac dyspnea. Engel's certificate of discharge from the Marine Hospital stated: "Patient is not fit for duty and is to continue treatment as an out-patient." If Captain Hibstenberg had asked to see Engel's certificate of discharge the fact that he was not fit for duty would have been instantly apparent. Certainly under the circumstances ordinary prudence required Captain Hibstenberg to cause Engel to produce his certificate of discharge. Captain Hibstenberg's failure to take this simple precaution under the circumstances alone was sufficient to render him negligent.

Moreover, Engel's work on board the vessel was unduly heavy for an asthmatic. Captain Hibstenberg was aware that Engel's breathing was labored and also that he had suffered heat prostration in the Persian Gulf. Captain Hibstenberg was also guilty of negligence because he failed to relieve Engel of his too arduous duties on board the vessel. There can be no doubt, as the court below found, that Engel's work on board the "Pittsburgh" was a contributing cause to Engel's death.

Engel was guilty of contributory negligence in assuming and carrying on his duties as steward and in making no complaint to Captain Hibstenberg.

The findings of the trial court in respect to the foregoing matters are correct and find adequate support in the evidence. The lower court's conclusions seem to me to be unimpeachable.

The relationship between the master of a vessel and a seaman is not the ordinary one of master and servant. As was said by this court in Murphy v. American Barge Line Co., 169 F.2d 61, 64, "It is worthwhile reminding ourselves of the orthodox rule that seamen are wards of the admiralty. The employer also occupies a position of guardianship * * *." Cf. Spellman v. American Barge Line Co., 3 Cir., 176 F.2d 716, 719.

I think it should be pointed out that to hold the master of the vessel guilty of negligence under the circumstances of the case at bar is not to require, as the majority opinion seems to assert, that the captain of every vessel must receive a doctor's certificate of fitness from each member of his crew or require each of them to undergo a physical examination to demonstrate good health. In the instant case the circumstances were such as to put the captain on notice of Engel's impaired health.

I think that the decision of the court below should be affirmed.

McLAUGHLIN, C. J., concurs in this dissent.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

PER CURIAM.

For the reasons stated in the opinion prepared by the late Judge O'CONNELL and filed, by order of the court, on December 22, 1949, which opinion is adopted as the opinion of the court, the judgment of the district court will be reversed.

Chief Judge BIGGS and Judges McLAUGHLIN and STALEY dissent upon the grounds stated in the dissenting opinion filed by Chief Judge BIGGS on December 22, 1949.