## GRAY v. BERNUTH, LEMBCKE CO., Inc.
### No. 147.

United States District Court
E. D. Pennsylvania.
Filed Dec. 17, 1948.
Dated March 3, 1950.

Martin J. Vigderman, of Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Robert Cox, of Krusen, Evans & Shaw, Philadelphia, Pa., for defendant.

Before DAVID E. HENDERSON, District Judge specially assigned.

## Court's Findings of Fact.

1. On May 9, 1945, libellant was 27 years of age and a seaman in the United States Merchant Marine.

2. On May 9, 1945, the respondent, a New York corporation, possessed, operated and controlled the S. S. "Q. M. Bernuth" in foreign commerce.

3. On March 27, 1945, libellant was discharged from the United States Marine Hospital, Baltimore, Maryland, where he had been hospitalized for five days with a diagnosis of "anxiety state", as fit for duty in three weeks. Libellant gave a history of being nervous for the past 7 years.

4. On May 9, 1945, Libellant entered the employ of Respondent as a member, of the crew of the Steamship "O. M. Bernuth", in the capacity of Fireman/Water Tender, at the base rate of pay of $112.50 per month, plus overtime and found. Libellant, at the time he signed the contract of employment, informed no one of his nervous condition nor of his being acutely anxious and nervously disturbed on certain occasions prior to that date, although he has admitted full knowledge of those events and condition. No physical examination was made of Libellant by Respondent or on its behalf.

(a) Libellant admitted, in his history prior to his employment aboard the Steamship "O. M. Bernuth", that after 2 or 3 weeks at sea he experienced the return of acute tenseness and nervousness; that he did not like the sea but did like the income derived from sea duty.

5. During this voyage, libellant was nervous and tense, as the vessel traversed the Pacific Ocean to Pearl Harbor and Enwetok, Marshall Islands, during the time the United States was at war with Japan, and he was observed by the Second Assistant Engineer, his immediate superior, to be nervous and "shaky".

6. During this voyage and libellant's employment as aforesaid, and while the vessel was coming into the Panama Canal at the end of August or beginning of September, 1945, libellant was on duty in the fire-room of the vessel, where the temperature near the fires is about 130° F. Hav-

ing just performed his duties as to care of the fires and checking gauges, he sat down on a stool provided by the Chief Engineer of the vessel, under one of the two ventilators in the fire-room, to cool off and get some air. At that time, the Second Assistant Engineer, libellant's immediate superior, came into the room and ordered him to get up and spend the rest of his watch, or tour of duty, being about three hours more, standing between the fires, and forbid him from returning to the ventilator where he could obtain relief and fresh air, which caused an aggravation of his prior existing condition.

7. In accordance with these instructions, libellant stood by the fire without relief for about 45 minutes to an hour, when his head and chest began to throb; he became nauseous; his body trembled; he became short of breath and began to feel faint. At that point, the Chief Engineer came in and ordered him to go over under the ventilator to revive himself.

(a) Libellant did not collapse or become unconscious, and after only five minutes rest returned to duty and completed his watch of approximately 3 hours in duration.

(b) After this incident, Libellant performed his duties without complaint for 11 days, working 8 hours each day in the fireroom of the vessel.

8. The vessel docked at Balboa, Canal Zone on September 8, 1945, and the following morning, libellant applied for treatment at the United States Public Health Service where his condition was diagnosed as psychoneurosis, combat-Type, severe, and he was declared permanently unfit for sea duty. Because of this condition, he was compelled to surrender his seaman's papers to the United States Coast Guard, and he was ordered to leave the vessel.

9. Libellant was paid wages up to September 11, 1945, the date when he was removed from the vessel.

10. Libellant was sent to the United States Marine Hospital at Ancon, Canal Zone, where he remained from September 12 to October 9, 1945. A diagnosis was made of anxiety state, chronic, severe, and he was discharged as "improved, not able to work; transferred to United States hospital."

11. On October 21, 1945, libellant arrived back in Philadelphia. On October 29, 1945, although not feeling well, he went to work for Baldwins, as a pipe-fitter.

12. Libellant is entitled to maintenance at the rate of $3.50 per diem from the date of his arrival at Philadelphia on October 21, 1945, until the date he returned to work on October 29, 1945, or a period of 8 days. Calculated at $3.50 daily, this totals $28.00.

13. Libellant is entitled to wages at the rate of $112.50 per month, or $3.75 per diem, from the date of his signing off the vessel on September 11, 1945, until the date he returned to work at Baldwins, on October 29, 1945, or a period of 47 days. Calculated at $3.75 daily, this totals $176.25.

Conclusions of Law.

1. This Court has jurisdiction over the subject matter and the parties.

2. Libellant suffered an aggravation of a previous nervous condition while in the service of the S. S. "O. M. Bernuth", and his wages were terminated when he signed off articles on September 11, 1945.

3. Respondent is liable to the libellant for maintenance and cure at the rate of $3.50 per diem.

4. Libellant is entitled to maintenance and cure from September 12, 1945 to October 29, 1945, excluding such period when he was hospitalized at no expense to himself and when he was maintained by respondent on his trip back to Philadelphia.

5. Under the circumstances of this case, libellant is entitled to an award for maintenance and cure from September 12 to October 29, 1945, being 47 days, less 27 days during which he was hospitalized at no expense to himself, and 12 days during which he was being transported back to Philadelphia at the expense and maintenance of the respondent; libellant is thus entitled to an award for maintenance and cure for a total of 8 days, or the sum of $28.00.

6. Respondent is also liable to the libellant for wages at the rate of $112.50 per month, or $3.75 per diem.

7. Under the circumstances of this case, libellant is entitled to an award for wages covering the period from September 12, 1945 to October 29, 1945, or a period of 47 days at the rate of $3.75 per diem, or the sum of $176.25.

8. A decree should be entered in favor of libellant and against respondent for the sum of the above amounts, or a total of $204.25.