**MURUAGA v. UNITED STATES et al.**

No. 107, Docket 21154.

United States Court of Appeals
Second Circuit.

Jan. 25, 1949.

---

William L. Standard, of New York City (Louis R. Harolds, of New York City, of counsel), for libellant-appellant.

John F. X. McGohey, U. S. Atty., and Joseph K. Innees, both of New York City (Charles Miller, of New York City, of counsel), for respondents-appellees.

Before L. HAND, Chief Judge, and CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant is a chef about fifty-one years old who became incapacitated while a member of the crew of the S.S. Uruguay, a vessel owned by the United States and operated under the standard form of agency agreement by Moore-McCormack Lines, Inc. His illness was not caused by his employment.

When the vessel was at sea on March 8, 1945, he succumbed to dizziness and chills and was cared for in the sick bay until the voyage ended on the arrival of the vessel at the Port of New York on March 26, 1945. He then entered the Marine Hospital at Stapleton, S. I., where he was examined and found to be suffering from high blood pressure, his condition being diagnosed as hypertensive cardiovascular disease. He responded well to treatment and was discharged from the hospital on April 27, 1945 when no further hospitalization was thought necessary. He was told to rest for two weeks and report back for a check-up. He took the rest but apparently did not return to the hospital until August

9, 1945 after he had again become dizzy. Meanwhile he had been treated for hypertension by two private physicians and had unsuccessfully been looking for work. He was a patient at the Marine Hospital from August 9, 1945 until his discharge on September 19, 1945. A notation made then in the hospital record reads, "Condition improved, no further hospitalization necessary, fit for duty in two weeks." He again sought work and his request for re-employment by Moore-McCormack Lines, Inc., was granted subject to his being found able upon a physical examination but he was, upon examination, not found fit. He was told, however, that money was due him and on October 4, 1945, after being advised by the claim agent of Moore-McCormack Lines, Inc., that he was entitled to $341.00 in full for additional maintenance and cure, he accepted that amount and released the company in writing from all further liability.

Following the receipt of this payment, he was again treated by two private physicians for hypertension and again tried to find work but without success. On June 7, 1946 he returned to the Marine Hospital with the "same complaints" and remained there as a patient until September 23, 1946 during which time a sympathectomy was performed. He later received some treatment at the hospital as an out-patient and, returning as an in-patient on April 9, 1947, remained as such until October 22, 1947 when he was again discharged as improved but not fit for duty. He, thereafter, from November 27, 1947 was an out-patient at the hospital until the trial of this case in March 1948.

At the trial, the undisputed medical evidence showed that his disease was incurable and that he would require treatment during the remainder of his life. The trial judge made findings in accord with the facts above outlined and also found that the $341.00 paid the appellant " * * * fairly measured the financial responsibility of the respondents toward the libellant for maintenance and cure rendered necessary by the illness to which he fell a victim * * * " He did not, however, find the date when the appellant's condition had improved, or

would be improved, to the maximum to be expected from treatment. He also found that "The libellant understood the nature of the dispute between his employer and himself and understood the nature and character of the release and its legal effect, when he signed it and accepted the said $341." The latter contained the words "111 Hypertension cardio vascular disease." He held, accordingly, both that the appellant had been fairly compensated for maintenance and cure and that his release was, in any event, a bar to this action.

 We cannot find support in the record for the finding that the appellant signed the release with adequate knowledge of his physical condition and understanding of his legal rights. He was told how the amount of three hundred and forty-one dollars was computed but not advised by anyone except the claim agent concerning his legal rights and by him only by the assertion, without other explanation, that the amount was the equivalent of them in money. He was unskilled in the law and of necessity relied upon what the claim agent said. The burden was on the appellee to show that the seaman signed the release with "full understanding of his rights." Garrett v. Moore-McCormack Co., Inc., 317 U.S. 239, 63 S.Ct. 246, 252, 87 L.Ed. 239. This is an essential prerequisite to the validity of a seaman's release. Bay State Dredging & Contracting Co. v. Porter, 1 Cir., 153 F.2d 827. And seamen who are induced to sign releases without benefit of counsel and are unfamiliar with their legal rights are not to be held bound. Hume v. Moore-McCormack Lines, Inc., 2 Cir., 121 F.2d 336. This appellant understood when he signed the release that he was ready for work and hoped to be re-employed. The finding that he executed the release with adequate knowledge of his condition and his legal rights must be set aside as clearly erroneous.

 Perhaps, however, he has already been paid the equivalent of what additional maintenance and cure is due him. The shipowner is not an insurer of the health of seamen and their sickness not caused by their employment does not create any liability of the shipowner beyond that to

provide maintenance and cure. Though this liability does not necessarily end when the voyage is ended, it is discharged when the shipowner has provided actual maintenance and cure, or its equivalent in money, up to the time when the seaman has recovered from his disability to the extent it is reasonable to believe recovery under treatment is possible. Lindgren v. Shepard S. S. Co., 2 Cir., 108 F.2d 806. What that date may be in any particular case is what competent evidence may show it to be. What allowances in money for maintenance and cure in addition to hospitalization and treatment actually furnished have been made in other cases and the time periods on which those allowances have been based are irrelevant. Each case is to be decided on its own established facts. We read Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 to mean not only that a seaman suffering from an incurable disease not caused by his employment is entitled to maintenance and cure up to that time when no further improvement in his condition is to be expected but that, if that period has not passed at the date of the trial, it may be given effect in the immediate future provided a definite course of treatment and a future date when it will have served its purpose is proved. But when maintenance and cure has brought about all the improvement to be expected in an incurable disease the shipowner's liability ends and thereafter the health of the seaman is at his own risk so far as the shipowner is concerned. If the seaman thereafter needs attention to maintain his improvement at the maximum, to assist him in recovery from relapses, or to restrain the progress of the disease, the shipowner is not bound to provide that. See Farrell v. United States, 2 Cir., 167 F.2d 781. As we cannot tell from this record when, if ever, the appellant did reach the point of maximum improvement in his incurable condition the decree must be reversed for a finding as to that and for a decree giving due effect to it.

As we have said, it may be that this will not change the result but if it does and the appellant becomes entitled to a decree both the shipowner and the managing agent are liable. See Hust v. Moore-McCormack Lines, Inc., 328 U.S. 707, 66 S.Ct. 1218, 90 L.Ed. 1534; McAllister v. Cosmopolitan Shipping Co., Inc., 2 Cir., 169 F.2d 4; Little v. Moore-McCormack Lines, Inc., 1948, Super.Ct. Baltimore City, Md.

The appellees have argued also that the appellant's right to recovery for additional maintenance and cure was lost because he failed to report back to the Marine Hospital as directed. That alone would not deprive him of this right. Rey v. Colonial Navigation Co., 2 Cir., 116 F.2d 580; Moyle v. National Petroleum Transport Corporation, 2 Cir., 150 F.2d 840. But his voluntary refusal to submit to needed hospital care would have done so. Bailey v. City of New York, 2 Cir., 153 F.2d 427. There is no finding as to whether he did voluntarily reject such hospitalization and apparently he did not on the evidence in this record but we leave that subject open for determination on the remand.

Reversed and remanded.