CLEMENTE SANZ, Plaintiff, *v.* ISBRANDTSEN COMPANY, INC., Defendant.

Supreme Court, Trial Term, New York County, February 21, 1949.

*William L. Standard, Herman Rosenfeld* and *Louis R. Harolds* for plaintiff.

*John L. Quinlan* and *John J. Martin* for defendant.

WALTER, J. From March 16 to May 29, 1945, plaintiff was chief cook on the S.S. *Hannis Taylor,* a United States Government owned vessel, the business of which was being managed and controlled by defendant under a general agency agreement of the kind involved in *Hust* v. *Moore-McCormack Lines* (328 U. S. 707).

Plaintiff claims that about six o'clock in the morning of April 5 or 13, 1945, while the ship was at sea, he went to the icebox to get food for the day's meals, that the floor, or deck, in front of the icebox, was covered with about two inches of dirty and greasy water, that to keep his feet from getting wet he placed two pieces of wood in the water and stood on them as he attempted to open the icebox door, that the door stuck, and as he struggled to get it open he slipped and fell and injured his back.

On account of that injury he brings this common-law action in this court against the general agent above mentioned, alleging, in his first cause of action, that his injury was caused by the negligence of defendant and its agents, servants and employees, and, in his second cause of action, that while on board and in the course of his employment, and without fault on his part, he was

caused to become ill and was obliged to seek medical care and attention.

Under the general maritime law, a seaman who falls sick or is injured in the service of the ship is entitled, quite independently of fault or negligence, to maintenance and cure (really care); and a seaman who is injured by reason of unseaworthiness of the vessel, or a failure to keep safe and proper appliances in good order and condition, is entitled to indemnity for such injury in addition to maintenance and cure; but for injuries sustained through the negligence of master or crew, the general maritime law gave a seaman no indemnity beyond the expense of maintenance and cure (*The Osceola*, 189 U. S. 158, 175; *Chelentis* v. *Luckenbach S.S. Co.*, 247 U. S. 372; *Calmar S.S. Corp.* v. *Taylor*, 303 U. S. 525; *Loverich* v. *Warner Co.*, 118 F. 2d 690, certiorari denied 313 U. S. 577; *De Zon* v. *American President Lines*, 318 U. S. 660; *Bailey* v. *City of New York*, 55 F. Supp. 699; *The Bouker No. 2*, 241 F. 831; *Muruaga* v. *United States*, 172 F. 2d 318).

By the Merchant Marine Act of 1920 (the Jones Act; U. S. Code, tit. 46, § 688) a seaman injured in the course of his employment may maintain an action at law for damages, with right of trial by jury; the basis of liability under that statute being negligence (*Engel* v. *Davenport*, 271 U. S. 33; *Pacific S.S. Co.* v. *Peterson*, 278 U. S. 130; *The Arizona* v. *Anelich*, 298 U. S. 110; *The H. A. Scandrett*, 87 F. 2d 708, 710; *Stark* v. *American Dredging Co.*, 66 F. Supp. 296, 299).

This action, although actually brought on for trial and tried without a jury, thus must be considered as one in which a seaman asserts in a common-law action his right under the general maritime law to maintenance and cure and his right under the Jones Act to damages for injuries caused by negligence. No claim of unseaworthiness has been pressed.

Each of those rights generally and ordinarily exists only against the vessel and her owners; but by *Hust* v. *Moore-McCormack Lines* (328 U. S. 707, *supra*) it became settled that, at least as to injuries from negligence suffered prior to March 24, 1943, the effective date of the so-called Clarification Act (U. S. Code, tit. 50, Appendix, § 1291), the general agents of a Government-owned vessel are liable to the seaman in an action under the Jones Act based upon negligence; and the opinion in that case contains the specific statement, referring to the decision of the Oregon Supreme Court, the judgment of which was there under review (p. 719): " True, the decision applies specifically only to Jones Act proceedings. But it is equally applicable to

all other maritime rights and remedies dependent upon existence of the ' employer-employee ' relation, such as the right to maintenance and cure, etc.''

Defendant argues that *Hust* v. *Moore-McCormack Lines,* (*supra*) is not here controlling because plaintiff's accident, if he had an accident, occurred after March 24, 1943.

I need not consider that contention, at least so far as liability for damages for injuries caused by negligence is concerned, because I find that plaintiff did not sustain any injuries as a result of negligence. I find, on the contrary, that what plaintiff now claims was an accident due to negligence was in reality a recurrence of a chronic disease which plaintiff had before he was employed on this ship, and that it was the pain of such recurrence which caused plaintiff to fall. The evidence leading me to that conclusion will be stated later; but it is here proper to note that in *McAllister* v. *Cosmopolitan Shipping Co.* (169 F. 2d 4), now pending in the Supreme Court on certiorari, the Second Circuit Court of Appeals rejected the contention that the general agent is not liable in suits under the Jones Act based upon accidents occurring after March 24, 1943.

I must, however, consider the question whether the general agent is liable for maintenance and cure, for despite what I regard as the very strong intimation in the statement above quoted from the opinion in the *Hust* case (*supra*), that question has been rather widely debated with at least apparently inconsistent results. In *The Anna Howard Shaw* (75 F. Supp. 210) Judge MEDINA held that the general agent is liable for maintenance and cure. In *Shilman* v. *United States* (164 F. 2d 649) the Second Circuit Court of Appeals held that the general agent is not liable for wages; and in *Martinez* v. *Marine Transport Lines* (191 Misc. 652), our Appellate Term interpreted that as holding that the general agent is not liable for maintenance and cure; but Judge MEDINA considered *Shilman* v. *United States* (*supra*) on reargument, concluded that it did not decide that a seaman may not recover maintenance and cure from the general agent, and adhered to his own original conclusion that the general agent is liable for maintenance and cure (*sub nom. Warren* v. *United States,* 76 F. Supp. 735). Mr. Justice STEUER reached the same conclusion in *Healey* v. *Sprague S.S. Co.* (191 Misc. 164). In *Aird* v. *Weyerhauser S.S. Co.* (169 F. 2d 606, 611) the Third Circuit Court of Appeals held that the general agent is not liable for wages and maintenance and transportation expenses incurred because of alleged wrongful

discharge, which I cannot regard as pertinent here because of that case's element of wrongful discharge; but on the same day the same court in *Gaynor* v. *Agwilines* (169 F. 2d 612) held the agent not liable for maintenance and cure. That case is now pending in the United States Supreme Court on certiorari.

For such bearing as it may have on the question I mention that in the case at bar the shipping articles disclose that defendant was acting as agent for the vessel owner, U. S. War Shipping Administration. This, consequently, is a case of a disclosed principal, and the agent ordinarily would not be liable.

Nevertheless, the seaman's right to maintenance and cure is an incident of his status as a seaman (*O'Donnell* v. *Great Lakes Dredge & Dock Co.*, 318 U. S. 36, 42) and properly may be regarded as arising out of status or relation rather than out of contract; and for that reason, and also because of what seems to me the practical undesirability of making a distinction between the seaman's right to sue the general agent for negligence and for maintenance and cure, I agree with Judge MEDINA and conclude that a seaman entitled to maintenance and cure may get it by suing the general agent. The Second United States Court of Appeals seems now to have definitely committed itself to that view (*Muruaga* v. *United States,* 172 F. 2d 318, *supra*).

The next question for consideration is whether this plaintiff lost his right to maintenance and cure by failing to disclose his physical condition at the time he was employed.

Some cases assert flatly that a seaman warrants his fitness for the service for which he accepts employment (*The Mary Sanford,* 58 F. 926; *Peterson* v. *United States,* 27 F. 2d 182). Another statement is that liability for maintenance and cure does not extend to a seaman who, with knowledge that he is afflicted with a disabling disease, conceals that fact and holds himself out as fit (*Tawada* v. *United States,* 162 F. 2d 615, 617). Still another statement rather frequently repeated is that a sailor is not entitled to be treated on shipboard at the expense of the ship, nor to wages, whilst disabled by disease brought on by his own vices, *nor when he, being in a diseased state, ships as an able man, the master and owners being ignorant of his real condition* (*Chandler* v. *The Annie Buckman,* 5 Fed. Cas. No. 2591a, per BETTS, J., quoted and discussed in *Trimm* v. *United Fruit Co.,* 41 F. Supp. 395, which I lay aside because apparently resting upon the doctrine of seaman's fault rather than upon the doctrine of failing to disclose his condition). In *Writer* v. *The Richmond* (30 Fed. Cas. No. 18,104), the seaman shipped as an able-bodied seaman for a voyage in the East Indies, when he was affected with a

severe pulmonic disease. He died soon after the vessel left port, and the claim of his administrator for wages was rejected, the court saying that it was a fraud on his part to have represented himself as an able-bodied seaman.

Perhaps the best statement is that a seaman cannot recover for cure and maintenance if, at the time he was employed, he failed to disclose any fact which an ordinarily prudent person should have known was material to shipowner's risk of liability for cure and maintenance (*Lindquist* v. *Dilkes*, 127 F. 2d 21), wherein, under that rule, seaman, fifty-seven, was allowed maintenance and cure although he did not disclose that he had a long-standing urinary ailment which, although causing him some distress, had not prevented him from working for a long time, and the trial court found that it in fact had not created in his mind any doubt as to his ability to perform the services that would be required of him; *Burns* v. *United States* (62 F. Supp. 603) wherein, under that rule, seaman was denied maintenance and cure where he did not disclose the existence of a hernia and his disability was due to his having forgotten to bring his truss along.

I thus must review the evidence with a view to determining whether or not plaintiff failed to disclose any fact which he, as an ordinarily prudent person, should have known was material to the shipowner's risk of liability for maintenance and cure. That same review, plus some additional matters, will also serve to show the basis for my finding that plaintiff was not injured by reason of negligence.

From January 20 to April 14, 1943, about two years before shipping on the vessel being operated by defendant, plaintiff was on the S.S. *Wolverine*. On April 15, 1943, he was admitted to U. S. Marine Hospital on Staten Island. He stated that on April 12, 1943, at about 7:45 A. M. he was carrying a quarter of beef when he slipped and fell on his back. He complained of pain in his lower back. The hospital diagnosis is " sprain ligaments of lumbar sacral joint ". The ward surgeon's " impression " is recorded as " probably muscle strain of the back ".

At the time of his discharge, on April 30, 1943, plaintiff's condition was noted as " improved. Prognosis good ", but he was ordered to report for physiotherapy outpatient treatment for three weeks.

On October 1 or 2, 1943, plaintiff was again admitted to U. S. Marine Hospital on Staten Island, complaining of attacks of pain in his back and abdomen. He also stated that in the past

week he had had two attacks of severe pain in the left kidney region. The ward surgeon left instructions to "observe for renal calculi". The recorded diagnosis is "Possible ureteral stone. Stricture of the urethra". Plaintiff was discharged on October 11, 1943, as improved, prognosis favorable, and no disability, but was directed to return in one month for further treatment.

On October 19, 1943, however, plaintiff was again readmitted to the hospital with complaints and history of attacks of pain so severe as to require morphine. The ward surgeon recorded his impression as "Renal colic — from stricture". Plaintiff passed stones in his urine while in the hospital. Diagnosis of "nephrolithiasis, ureterolithiasis was changed to calculus in left ureter", and plaintiff was discharged October 26, 1943, as improved, prognosis favorable, further treatment none, but advised to refrain from work for fourteen days.

From February 8 to 20, 1944, and from March 7 to May 8, 1944, plaintiff was on the S.S. *Nicholas Herkimer;* from June 7 to July 25 and July 26 to October 19, 1944, he was on the S.S. *Green Mountain;* from November 14 to December 12, 1944; from December 13, 1944, to January 12, 1945; and from January 22 to February 26, 1945, he was on the S.S. *Marine Robin.*

Then, on March 16, 1945, as above stated, he joined the S.S. *Hannis Taylor.*

In the period from October 26, 1943, to April 5 or 13, 1945, nearly eighteen months, it does not appear that he required either hospitalization or medical treatment; and for about twelve of those months he was on active duty at sea.

But he had been told at the hospital in October, 1943, and he himself undoubtedly knew, that he had stones in his kidneys; and that is described in the medical testimony as a normally chronic condition which causes severe spasms of pain when a stone starts to pass from the kidney to the bladder and on out of the body. The passing and the accompanying pain may be quick or very slow.

On the morning of April 5 or 13, 1945, plaintiff was not at his accustomed duties. A steward reported to the purser and pharmacist's mate that plaintiff was ill. The mate went to plaintiff's bunk where he was then lying. Plaintiff said he had had a recurrence of a kidney attack, but nothing of any accident. A destroyer convoy came alongside in two or three hours and a specimen of plaintiff's urine was given to the doctor on that destroyer. Plaintiff himself was then sent ashore when the ship reached the Azores, but the result of the urine analysis or of the

doctor's treatment in the Azores do not appear. Plaintiff rejoined the ship, apparently continued his duties until the end of the voyage, and was discharged in New York on May 29, 1945.

I thus am constrained to find that when he shipped on the S.S. *Hannis Taylor* plaintiff had a disease of the kidneys of which he knew, from which he had suffered severe pain, and for which he had been hospitalized on at least two occasions. Perhaps the fact that nearly eighteen months had elapsed since the last hospitalization and he had been actively working for about twelve of those months had lulled him into a sense of security, and there is no reason to suppose that he had any special medical knowledge of the nature of what had happened to him in October, 1943; but I feel that as a reasonably prudent, although not highly educated, man he must have known that to one about to employ him in a capacity which would entail liability to him in case he became sick it was material to know about what he had been through. If he simply forgot in March, 1945, what pains he had experienced in October, 1943, it seems to me that he is in the position of the seaman in *Burns* v. *United States* (62 F. Supp. 603, *supra*) who forgot to take his truss on shipboard with him.

Under the rule, therefore of *Burns* v. *United States* (*supra*) and *Lindquist* v. *Dilkes* (127 F. 2d 21, *supra*) I find that plaintiff failed to disclose facts which he as an ordinarily prudent person should have known were material to the shipowner's risk of liability for cure and maintenance, and for that reason he is not entitled to maintenance and cure.

On June 13, 1945, two weeks after the end of his voyage on the S.S. *Hannis Taylor,* plaintiff was admitted to the U. S. Marine Hospital at 67 Hudson Street, New York City, with a history of a right renal calculus on April 5, 1945; and on June 14, 1945, he was admitted to another U. S. Marine hospital with complaints of pain in the back and groin and a notation that he had been admitted in 1943 for ureteral calculus and had passed a stone while there, and in April, 1945, had had another attack which lasted fourteen hours. Plaintiff remained in that hospital until July 7, 1945, when he was discharged as improved but with a three weeks' convalescent leave and a notation of recurrent nephrolithiasis and impacted calculus right ureter.

On August 24, 1945, plaintiff was examined by a doctor in private practice selected by himself or his lawyer. To that doctor he stated that about April 6th, while opening a tight icebox door he felt a sudden sharp pain in his right back and side which caused him to become unsteady on the wet floor and he fell. That

398

doctor found that plaintiff was tender on the right side of his lower back, had some slight swelling in the right buttock and thigh, and experienced limitation and pain on bending. He described plaintiff's condition as disabling to the extent of about 5%, but it does not appear that he either gave or advised any treatment or even rest. In answer to a hypothetical question he expressed the opinion that trauma caused a stone to move from the kidney, but in his report of August 28, 1945, to plaintiff's lawyer that doctor stated that from the history and the hospital admission it was apparent that plaintiff had an attack of pain due to renal pathology and as a result he fell and sustained a back injury which may be termed a low back syndrome.

Those things, plus the denials that there was water in front of the icebox door, persuade me, as above stated, that it was the pain of a passing kidney stone which caused plaintiff to fall, not negligence on the part of defendant or the ship.

As plaintiff has not established liability in negligence and has forfeited his right to maintenance and care, the complaint must be dismissed with costs.

I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.