LANGELAND v. UNITED STATES et al.

No. A. 142–78.

United States District Court
S. D. New York.

Nov. 6, 1950.

·Joseph A. Pinto, New York City, by Jacob Rassner, New York City, for libelant.

Irving H. Saypol, U. S. Atty., New York City, by Tompkins, Boal & Tompkins, New York City, (Arthur Boal, New York City, of counsel), for respondents.

McGOHEY, District Judge.

Libelant, a seaman, sued under the Suits in Admiralty Act.[1] The libel set out two claims; the first for damages on account of alleged personal injuries, the second for maintenance and cure. Both claims against Atlantic Steamship Line were dismissed on libelant's motion.

The statute provides that suits brought under it must be commenced within two years after the cause of action accrues. It further provides that notice of intention to sue must be given sixty days before commencement of suit. Here the notice was filed before the expiration of two years but that period had expired before the sixty days, and so no action was commenced within the required time. Libelant, at the trial, moved to dismiss the claim for damages against the United States, without prejudice to bringing a new one if Congress should amend the Act to toll the running of the two years' limitation during the sixty-day period. Thus there is left for consideration only the claim against the United States for maintenance and cure. As to that there is a complete absence of proof to justify an award.

The claim rests on the ground that libelant developed tuberculosis while in respondent's employ, but there is no proof whatever that this is so.

The libelant says he received an injury to his left chest on February 21, 1944, while on the respondent's Liberty Ship Virginia Dare. After having some oil rubbed on his chest by the purser, he returned to duty within a couple of hours and thereafter continued to stand his watches regularly. The ship was torpedoed and beached on March 6, 1944, at Tunis. Libelant, with the rest of the crew, remained ashore for about a week. They were then flown to Oran, and a week later were brought to the United States on another Liberty Ship. During this time libelant felt "a little pain * * * on the left side." Upon arrival in New York he was paid off. On the stand he was asked "How did you feel then?" (meaning at the time he was paid off). He replied "I was feeling to take a month off when I came back * * *." He did take a month off, but the evidence is that he did so for a reason other than his alleged injury or ill health. He said it was because he had "just got married." He did not go to a hospital or a doctor. On May 18, 1944 he reported to sign on the S. S. Hunter. An X-ray examination discovered a spot on his lung, and he went at once to the hospital. He remained there as an in-patient until January 2, 1945. Thereafter he received out-patient treatment in Government hospitals until October 20, 1948, when his treatments were stopped. The diagnosis then was "tuberculosis of the lung arrested."

There is no evidence whatever that his tubercular condition was caused by the alleged injury to his chest. Indeed, libelant's brief disclaims such contention and rests the claim for maintenance and cure on Rey v. Colonial Navigation Co., 2 Cir., 116 F.2d 580, page 583, which held that "If a seaman falls sick while in service, the shipowner is responsible for maintenance and cure, even though the germs of the disease were in his system when he joined the ship; the illness need not be caused by his service. * * *"

The difficulty in trying to apply that doctrine here, however, is that there is no evidence at all to show that libelant fell sick while in service of respondent. The only medical testimony was that of Dr. Lang, Chief of the Tuberculosis Service at United States Marine Hospital, Ellis Island. He was called only as a "fact wit-

---

1. 46 U.S.C.A. § 741 et seq.

ness", not as an expert. He merely identified some hospital records. These do not show that libelant fell ill while in the respondent's service, or that he had this disease during that time. There was a complete absence of proof as to when the tuberculosis started. Accordingly, there is no evidence on which to rest an award for maintenance and cure. That claim therefore is also dismissed.

Submit findings, conclusions and decree.