**Saul A. BRAHMS, Plaintiff,**

v.

**MOORE–McCORMACK LINES, Inc.,
Defendant.**

United States District Court
S. D. New York.
June 30, 1955.

· Jacob Rassner, New York City, for plaintiff.

Dow & Symmers, New York City (William A. Wilson, New York City, of counsel), for defendant.

WALSH, District Judge.

In this action plaintiff seeks damages for injuries received on board defendant's vessel, S. S. Mormacyork. He also seeks maintenance and cure. As an element of both he includes damage and need of treatment resulting from psychoneurotic factors as well as physical injuries.

At the close of plaintiff's case, I dismissed his claim for damages, finding that he had not proved unseaworthiness of the ship or negligence of the defendant. I reserved decision on the question of maintenance and cure.

Plaintiff was an oiler on defendant's vessel. As recreation, he was accustomed to taking sun baths on the poop deck of the vessel, an area set aside for the crew. Arising from his army cot on which he had been resting, plaintiff slipped on the deck and fell on his wrist and lower back. He fractured his wrist and claimed to have aggravated an old injury to his lower back.

The ship did not carry its own physician. The chief mate did not diagnose the fracture of the wrist but when the ship reached the next port, Rio de Janeiro, plaintiff, complaining of pain, was sent to a hospital by the ship's agent and his injury was correctly diagnosed and treated. There is no claim based upon inadequate treatment of his physical injuries.

Plaintiff claimed that the accident in this case was the result of an improper accumulation of soot on the poop deck. At the close of his case, I dismissed this claim. As trier of the facts, without a jury, it was not necessary that I give to plaintiff's testimony the most favorable possible aspect, rather it was my duty to give the testimony of his witnesses such weight as I thought it worth as trier of the facts as well as the law. Fed.Rules Civ.Proc. rule 41(b), 28 U.S.C.A.; 5 Moore, Federal

Practice, (2nd Ed.) § 41.14(3), and (4); Allred v. Sasser, 7 Cir., 170 F.2d 233, 235; United States v. Borden Co., D.C. N.D.Ill., 111 F.Supp. 562, 566; Defense Supplies Corp. v. Lawrence Warehouse Co., D.C.N.D.Cal., 67 F.Supp. 16, 20–21; see also Bach v. Friden Calculating Mach. Co., 6 Cir., 148 F.2d 407, 411. In this regard, it is necessary that I make findings of fact and I reassert those found at pages 334–336; 346–349; as well as those at pages 356–358 of the Stenographer's Minutes of the trial.[1]

In substance, I found that plaintiff's claim of an undue accumulation of soot was unbelievable. The portion of the deck on which he fell was unprotected by any obstruction; the vessel was proceeding against a seventeen mile per hour wind two points off her starboard bow. The vessel's speed was at better than fifteen knots. Under such conditions, soot falling on the afterpart of the vessel could not be expected to accumulate to an unusual or unreasonable extent. Further, the demeanor of both plaintiff and his witness, Perez, was unconvincing when they testified regarding soot on the deck. A photograph put in evidence by plaintiff showed his white army cot which had remained on that deck from the time of his accident until the following day when the photograph was taken. Although the deck was out of focus, the cot was not. It showed no accumulation of soot.

The claim for maintenance and cure presents a much more difficult question. Of course, plaintiff is entitled to maintenance and cure until he reaches the point of maximum cure as to the physical injuries he sustained. Concededly, he has received this. It is also claimed that his precarious emotional balance was disturbed by events occurring on the vessel and that he is entitled to maintenance and cure until this balance is restored by psychiatric treatment, or at least until his point of maximum recovery is reached.

Plaintiff's claim is that he suffered psychic trauma on board defendant's vessel and that this aggravated his pre-existing disease. Plaintiff is mentally ill. This illness, of course, predated his employment by defendant. Before that he had obtained psychiatric help. Also prior to his employment by defendant, he had suffered physical injuries from a series of accidents on other ships beginning with an injury to his lower back, followed by a second injury to his lower back and injury to his cervical spine and shoulder. On defendant's vessel, in addition to breaking his wrist and hitting his back again, he claims that his emotional balance was disturbed by other incidents, such as the delay in the diagnosis of the fracture of his wrist, and a minor altercation with the ship's officers in getting ashore in Rio de Janeiro for treatment.

I have found that none of the incidents occurring on defendant's ship could be attributable to the fault of the defendant, but, of course, fault is not an element in a claim for maintenance and cure.

The obligation of maintenance and cure with respect to pre-existing illnesses is no longer subject to doubt. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 527, 58 S.Ct. 651, 82 L.Ed. 993; The Bouker No. 2, 2 Cir., 241 F. 831, 833; Rey v. Colonial Nav. Co., 2 Cir., 116 F.2d 580, 583; Muruaga v. United States, 2 Cir., 172 F.2d 318; 2 Norris, Seamen (1952) §§ 354–6. This obligation has been applied to psychoneurosis, as well as physical disease. Gray v. Bernuth, Lembcke Co., D.C.E.D.Pa., 89 F.Supp. 156. In each of these cases, however, the pre-existing disease manifested itself and required treatment while plaintiff was still serving on defendant's vessel. In the present case, there was no manifestation of plaintiff's mental illness until four months after he was returned home from Rio de Janeiro and had consulted the psychiatrist who testified for him at this trial.

1. To the extent that I applied the rules applicable to directing a verdict in a jury case, I was in error applying too harsh a rule.

■ Where illness has not manifested· itself until after plaintiff has left the ship, ordinarily there can be no recovery of maintenance and cure. The W. H. Hoodless, D.C.E.D.Pa., 38 F.Supp. 432, 434; Langeland v. United States, D.C. S.D.N.Y., 93 F.Supp. 645. At least there must be convincing proof of causal connection between the disability and the service of the ship. Miller v. Lykes Bros.-Ripley S. S. Co., 5 Cir., 98 F.2d 185, 186; Capurro v. The All America, D.C.E.D.N.Y., 106 F.Supp. 693, 694. It was so held with respect to the claim of psychic trauma, Biesemeyer v. United States, D.C.N.D.Cal., 90 F.Supp. 382.

■ The first question is whether the defective functioning of plaintiff's mental and emotional equipment was caused or aggravated by occurrences in the service of the ship. There is no evidence from which I could find that it was. All that plaintiff's psychiatrist testified to was that the incidents on defendant's ship and the litigation growing out of it were among the fancied grievances and the fancied causes of defendant's fancied disabilities which kept him from working. With the exception of physical disabilities already fully provided for, the occurrences on defendant's ship play no part in plaintiff's actual disability. They are present only in his fantasy. They did not cause him to be fanciful, or to be unbalanced; they merely happen to be the subject upon which this unbalance has manifested itself.

There is no satisfactory proof that plaintiff's orientation with reality is any different now from what it was before the voyage. He testifies that he is having greater difficulty now, but although I believe his testimony was honestly given, it is on this very subject that he is unable to evaluate as a normal person. His psychiatrist, although a family friend, gave no testimony as to plaintiff's condition before the voyage. He simply testified that plaintiff is unable to work now. Plaintiff, in order to establish a basis for comparison, relies on the fact that he was able to work on defendant's ship and that he passed defendant's routine medical examination. I do not think this a proper basis for comparison. Although he was able to perform his duties in an apparently normal manner, we have no way of knowing that a psychiatrist would not have recognized his disability if he had examined him. As far as relying on lay observation is concerned, plaintiff's conduct and action in the courtroom suggested that he could probably carry ·off his work at sea in an apparently normal fashion today. His psychiatrist is no doubt right, that he is not actually fit for duty but that may have been equally true previously. In any event, plaintiff has not sustained his burden of proof of any change in his mental and emotional control as a result of his services on defendant's ship.

The next question is whether plaintiff's pre-existing disease manifested itself while plaintiff was in the service of the ship. There is no proof that it did.

The final question is whether under the circumstances of this case, there is any other basis for extending liability for maintenance and cure. There are cases in which maintenance and cure previously granted was extended to cover in whole or in part the period of recovery from the effects of a pre-existing illness which manifested itself after the seaman left his ship but before the expiration of the original period of maintenance and cure. Albano v. United States, D.C.D.Mass., 98 F.Supp. 150; Robinson v. United States, D.C.S.D.Ala., 76 F.Supp. 422, affirmed 5 Cir., 170 F.2d 578; White v. Campbell, D.C.W.D.Pa., 96 F.Supp. 195; Robinson v. Swayne & Hoyt, D.C. S.D.Cal., 33 F.Supp. 93, 94. In only one of them, White v. Campbell, supra, was the intervening period as long as that here. In each case although the court found a causal connection between the new disability and plaintiff's employment by defendant, the courts do not seem to have insisted upon very compelling proof in this regard.

In one other case, Loverich v. Warner Co., 3 Cir., 118 F.2d 690, an award of

maintenance and cure was made six years after plaintiff left defendant's employment based upon cancer acquired during the period of employment, although not necessarily caused by it. The case must be considered in the light of its particular circumstances. Plaintiff had for eight years worked steadily for defendant and defendant discharged plaintiff suspecting that he had cancer but without so informing him. In a sense, the court merely gave plaintiff that which he might have been entitled to at the time defendant discharged him; it declined to permit defendant to escape an obligation by taking advantage of its secret information as to plaintiff's physical condition at the time of discharge. So the actual holding in the case may be restricted to its facts.

▇ The court in the Loverich case, however, the Supreme Court in the Calmar case, and Court of Appeals for this circuit in The Bouker No. 2, all seem to suggest flexibility rather than rigidity in dealing with pre-existing illness. The true rule of these cases is that plaintiff be dealt with reasonably in the light of his disability, the circumstances of his employment and the nature of the relationship between seaman and ship operator. Usually he will be allowed maintenance and cure only if he actually falls sick in service. Usually the period of maintenance and cure must last until the point of maximum cure. But if these tests lead to unreasonable results they may be put aside.

▇ Under the circumstances, plaintiff is entitled to further maintenance and cure. He was physically injured while in service of the ship and temporarily disabled. Before he recovered to a point that defendant was relieved of its obligation to him, he was further disabled by his pre-existing illness. Although in a narrow sense, the new disability was not caused or aggravated by his service for defendant, it was part of the progressive manifestation of plaintiff's present inability to care for himself which began on board ship. There is no proof of intervening cause.

▇▇ The period of this extended maintenance and cure should not exceed that reasonable under the circumstances and need not necessarily continue until plaintiff reaches a point of maximum cure. Consideration must be given the elusive nature of the disability, its dissimilarities from physical disease, the length of plaintiff's service with defendant, and the availability of treatment at the Marine Hospital. Account may also be taken that the plaintiff is not the homeless, friendless wanderer such as the court often depict a seaman. He is a long time resident of New York. His family is well established here. He has a brother who is a physician attached to a leading hospital. He is well informed as to the possibilities of treatment by public agencies as well as private. Further, the illness from which he suffers is unrelated to the perils of the calling of the sea. It presents the sort of unpredictable risk of heavy medical expense which is customarily spread upon as broad a base as possible, and, in this case, one in which the major responsibility for treatment has been assumed by the state itself.

Under all of the circumstances, it is my conclusion that plaintiff can receive adequate treatment for the mental and emotional difficulties at the Marine Hospital; that he should receive maintenance for a six month period so that his treatment may be on an out-patient basis if that is most favorable to him. This compares favorably with the allowance of six weeks maintenance and cure made in Albano v. United States, supra. Under the circumstances, a lump sum award will not violate the rule of the Calmar case.

The first cause of action is dismissed. Judgment for plaintiff on the second in the amount of $1,500.