**SPELLMAN v. AMERICAN BARGE LINE CO., Inc.**

**No. 9746.**

United States Court of Appeals
Third Circuit.

Argued Feb. 11, 1949.

Decided Aug. 9, 1949.

Before BIGGS, Chief Judge, and O'CONNELL and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

Marjorie Spellman, being mentally incompetent, by Maggie Roush, her mother and next friend, both referred to hereinafter as "Spellman" for the sake of brevity, brought suit in the court below to recover from the American Barge Line Company ("American") (a) maintenance and cure, (b) damages allegedly suffered by Spellman because the captain was incompetent, and (c) damages allegedly suffered by Spellman because of the negligence of the captain within the purview of Section 33 of the Jones Act, Act of June 5, 1920,

46 U.S.C.A. § 688.[1]  The recoveries sought under (b) and (c) are based on identical facts and constitute in reality but one charge of negligence as will appear hereinafter.  Due to the way in which the complaint was drawn the court below, quite properly we think, throughout the proceedings treated (a), (b) and (c), as if they were three separate counts.  See in particular the first paragraph of the opinion of the court below, 76 F.Supp. at page 1, in which the learned trial judge granted a new trial following the first trial of the cause, and the charge of the court at the second trial.  We are presently concerned with what occurred at the second trial.  The verdicts on all counts were in favor of American.  The court below wrote no opinion following the second trial.

The pertinent facts are as follows:  On December 13, 1946 Spellman entered the employment of American in the capacity of a maid on board the M. V. Duncan Bruce, owned by American and operated by it on the Ohio River.  Her employment was interrupted for several weeks while the vessel underwent repairs.  On January 8, 1947 she returned to the Bruce for service.  On this date as well as on December 13 she appeared to be in good mental health.  Eight days later, on January 16, 1947, her conduct became queer and irrational.  A progressive disintegration of her personality seemed to take place.  Her roommate, Beckett, also a maid on the Bruce, stated that Spellman slept on the floor rather than in her bunk and for three straight nights woke her, Beckett, in the middle of the night to ask Beckett if she was afraid to remain in the room with her.  Spellman became extremely nervous, took to wringing her hands, and developed a quarrelsome attitude toward other members of the crew, in particular toward the cook who also was a woman.  Spellman's memory failed to the point where it became necessary to write out for her the things she was supposed to do, albeit she had previously proven herself to be experienced in her work.  Beckett testified that she became afraid of Spellman because she had ceased to be rational.  The captain of the Bruce denied knowledge of all these facts prior to the time Spellman left the boat but there was testimony from Beckett that Spellman's conduct was mentioned by Beckett several times in the captain's presence at the dinner table.

On January 17 Spellman went to the captain and according to his testimony requested him to send her to a hospital.  A company form was made out[2] which contains the notation respecting Spellman "To [sic] Nervous to do the work—Condition very Bad.  Starts Trouble with crew."  At the bottom of this form is the further notation "Transportation paid from Evansville [Indiana] to Louisville (Bus)."  The captain testified that he wrote the first notation quoted on the form so that Spellman would not incur penalties from her union for leaving the vessel without a replacement and that he was unaware of her disturbed mental condition.  He gave her a "hospital ticket" which entitled her to admission to a United States marine hospital.[3]  He said that it was his practice where a sick or injured seaman could move "under his own power" to give him a hospital ticket and means of transportation; if, on the other hand, the seaman was unable to walk, he summoned an ambulance and had him sent to a hospital.  There was some discussion between Spellman and the captain as to whether she should go to the marine hospital at Evansville or whether she should go to some other place.  What was said during this discussion is not clear from the record and it is not necessary, under the view which we take of the case

[1] As to the right of Spellman to base her claim for damages both on the General Maritime Law and the Jones Act, see our decision McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 724.

[2] Plaintiff's Exhibit No. 2.

[3] See "Rules and Regulations" promulgated pursuant to Section 322 of the Public Health Service Act, Act of July 1, 1944, 58 Stat. 696, 42 U.S.C.A. § 249, which provides "Sickness or injury while employed.  A seaman taken sick on board or ashore while actually employed on a vessel shall be entitled to care and treatment without regard to length of service."  See 10 F.R. 8138, Section 2.315, and 12 F.R. 6166-7, Section 32.15.

to decide what this conversation was. Spellman left the Bruce on the morning of January 18 accompanied by two members of the crew who took her to the bus station and bought her a ticket for Louisville. There follows a hiatus in the known chain of events but two days later Spellman was seen, in a dazed condition, on the streets of her home town, Point Pleasant, West Virginia, by the sheriff of the County. She was taken home and was examined physically by her mother and her sister-in-law. Her clothes were torn; her body was dirty and unkempt. She had numerous bruises and contusions on her body. She required and received extreme sedation but despite this could not be treated at home, and was transferred to the Spencer State Hospital, at Spencer, West Virginia, where she was found to be suffering from dementia praecox, catatonic state.[4] Spellman was finally discharged from the hospital with a "guarded prognosis", and it is agreed by the medical witnesses that she is presently in a state of "partial remission" from the disease and that in all probability she will never fully recover. A physician, appearing on behalf of Spellman, testified that the two days of wandering that she had endured with its concomitant small injuries to her person had aggravated her illness.

■ As to (a), supra, Spellman's claim for maintenance and cure, it is well established, The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, that the shipowner is liable to the seaman for maintenance and cure for sickness arising during the voyage. There is no evidence that Spellman herself became aware of her illness until January 17, 1947. It follows that even if in law there be a warranty by the seaman of his own health, Lindquist v. Dilkes, 3 Cir., 127 F.2d 21, 24–25, such a principle is inapplicable under the instant circumstances. The testimony in the record is so strongly probative that Spellman became ill on the Bruce that any other conclusion would be against the weight of the evidence.

■ The court's charge to the jury in respect to maintenance and cure was erroneous. It precluded recovery by Spellman as it was the equivalent of a binding instruction in American's favor. The learned trial judge specifically instructed the jury that while the shipowner owed a duty to furnish maintenance and cure to Spellman if " * * * he furnishes a hospital ticket entitling the * * * sick seaman to enter a hospital and there receive bed and board and medical attention, under the law that would discharge the defendant's obligation to furnish maintenance and cure." [5] He said also that "If you find that * * * [Spellman] became sick during the time mentioned, and if you find that that sickness continued, and if you find that she didn't receive a hospital ticket which would entitle her to maintenance and cure, then your verdict should be for the plaintiff on this claim for maintenance and cure. On the other hand, if she didn't become sick during this time or if she was furnished with a hospital ticket entitling her to maintenance and cure, then your verdict should be for the defendant on this claim for maintenance and cure." [6]

■ Merely giving a hospital ticket to a seaman manifesting symptoms of a mental disorder, even if he be furnished also means of public transportation and some money, may not necessarily be a discharge of the vessel owner's obligation to furnish maintenance and cure. "If hospitalization was the way in which the obligation of maintenance and cure was to be fulfilled, this would mean, we think, that there was a duty to provide means to get the man there." Murphy v. American Barge Line Co., 3 Cir., 169 F.2d 61, 64, certiorari denied American Barge Line Co. v. Murphy, 335 U.S. 859, 69 S.Ct. 133. Merely furnishing means of transportation without making sure that they are employed by a mentally ill seaman may

---

[4] Catatonia is described in Gould's Medical Dictionary, Fifth Edition, as "A form of mental derangement progressing from melancholia successively through mania and stupidity to imbecility and tonic convulsions."

[5] See p. 302 of transcript.

[6] See id. pp. 304–5.

not amount to affording a method of transportation at all. Giving a bus ticket to a person who is mentally ill is hardly a method of affording safe transportation. What the captain of The Bruce did must be found by the jury to have been adequate or insufficient in the execution of his duty in the light of the circumstances in the case. If the captain had had Spellman conducted to a hospital and that hospital had effected the maximum cure obtainable, Farrell v. United States, 336 U. S. 511, 518–519, 69 S.Ct. 707, and if American had paid the expenses necessary to effect such a cure including her subsistence, then Spellman could have no claim for maintenance and cure. These things were not done, however, and American does not contend to the contrary.

Neither the court below nor this tribunal is faced in the instant case with the difficult questions presented in Farrell v. United States, supra, for in the case at bar the amount due for medical expenses and for maintenance and cure, if any be owing, has been stipulated by the parties. We do not have to deal with a difficult cut-off date for it appears that if Spellman be entitled to maintenance and cure, the cut-off date in effect has been stipulated. If the evidence presented at the third trial is substantially the same as that presently before us, the court below should charge the jury at that trial in the terms indicated in this opinion, viz., that if they find that Spellman became sick upon the Bruce she is entitled to the verdict for maintenance and cure.[7]

In conclusion on this point we point out that the court's charge to the jury embraced a comment on the testimony of Dr. Worth F. Bloom, a physician employed by the United States Public Health Service at a marine hospital. Dr.

Bloom was called not as a medical witness but to construe the provisions of the rules and regulations promulgated under Section 322 of the Public Health Service Act, 42 U.S.C.A. § 249, and in particular to testify as to the right of a seaman to be admitted to such a hospital in relation to the length of his service. Dr. Bloom was a medical doctor and did not profess to be an expert in the construction of regulations promulgated under an Act of Congress. The construction of such a regulation is for the court and certainly a lay witness should not be permitted to interpret it. The matter was further confused by the court's charge[8] in which reference was made to Dr. Bloom's testimony regarding wartime service and "* * * conditions that existed during wartime * * *"[9] in marine hospitals. The court concluded the charge on this point by saying that the jury had heard Dr. Bloom's testimony as to whether or not the regulation as to admission of seamen in relation to length of service was in force and being followed and ended this part of the charge with the statement, "It is somewhat indefinite."

A court of the United States may always take judicial notice of rules and regulations formally promulgated pursuant to an Act of Congress. The pertinent regulation in effect as of the time of the occurrence of Spellman's illness is set forth in note 3, supra, and need not be repeated here. The regulation is pertinent, however, only in that it demonstrates that Spellman could have received care at a marine hospital had she reached one.

(b) and (c), supra, Spellman's claim to damages because the captain was incompetent or because he was negligent within the purview of Section 33 of the Jones Act can be discussed together con-

---

[7] Spellman insists that she was entitled to a directed verdict on her claim for maintenance and cure because of request No. 8 of her "Requests for Additional Admissions" under Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A. We cannot agree. American never made the admission requested and though the court "received" the request there remained a question of fact for the determination of the jury since there was no admission. See Fidelity Trust Co. v. Village of Stickney, 7 Cir., 129 F.2d 506, 511.

[8] See p. 303 of the transcript.

[9] The court below assumed that conditions in marine hospitals in 1947 were the equivalent of those of wartime.

veniently. Spellman points out that American owed a duty to her to furnish a seaworthy vessel and that for a vessel to be "seaworthy" it must be manned by a generally competent master and crew. The Rolph, 9 Cir., 299 F. 52, 54, certiorari denied, Rolph Navigation & Coal Co. v. Kohilas, 266 U.S. 614, 45 S.Ct. 96, 69 L.Ed. 468. Spellman contends that if the captain of the Bruce failed to realize the gravity of her condition he was ((b), supra) incompetent: or, if he was aware of her mental condition, he was ((c), supra) negligent within the purview of the Jones Act. In short Spellman asserts that the captain of the Bruce was incompetent or negligent because he permitted her in her disturbed mental condition to attempt to go unattended to a hospital, and that her mental illness was aggravated by this. There was evidence from which the jury could have found that the master was either incompetent or negligent in permitting Spellman to embark on her journey in the manner indicated. If the jury, under proper instructions, were to find the foregoing propositions or either of them in Spellman's favor, she would be entitled to damages.

American contends that it fulfilled its duty to Spellman under (b) and (c) when the captain of The Bruce gave her a bus ticket, a sum of money and a hospital ticket, and had her conducted to the bus terminal at Evansville, Indiana. The court's charges on these points were not only inadequate but also, as we have pointed out, the learned trial judge had previously erroneously charged in that portion of his charge relating to maintenance and cure that the ship owner had discharged its duty to furnish maintenance and cure to Spellman by furnishing a hospital ticket and the other items mentioned. It will be observed that under the circumstances of the instant case the shipowner's duty to make proper medical care available under (b) and (c) is substantially the same as furnishing adequate maintenance and care under (a). This is apparent from the context of the evidence and from the contentions of the respective parties. It fol-

lows, therefore, that when the trial court gave the erroneous charge respecting maintenance and cure, (a), supra, in effect directing a verdict in favor of American on that part of the case, it also, to all intents and purposes required the jury to find in favor of American on (b) and (c). The gravamen of charges (b) and (c) as we have stated was that the captain of the Bruce incompetently or negligently failed to make adequate medical attention available to Spellman; in other words that he failed by reason of incompetence or negligence to furnish her maintenance and cure. For the purposes of this case maintenance and cure and proper medical attention may be deemed to be synonymous.

The jury could have found that the indicia of Spellman's mental illness were not sufficiently plain to have put the captain on notice of her disturbed state and, therefore, in the exercise of reasonably prudent judgment on his part he could not have been expected to do more for her than he did do. The jury could also have found that he acted competently or without negligence and therefore would be justified in returning verdicts for American on (b) and (c) above. The questions indicated were for the jury, however, and the court below by giving what was tantamount to a binding instruction in American's favor in respect to maintenance and cure, i. e., that the captain of the Bruce fulfilled his obligation to Spellman by giving her the hospital ticket, the bus ticket and the money, and by having her conducted to the bus terminal, inadvertently stifled the jury's inquiry into the substantial issues of this aspect of the case. While it would be unreasonable to require the captain of the Bruce or any other layman to be able to diagnose the exact nature of Spellman's illness, nonetheless it would be proper for the jury to find, as we have indicated, that the captain of the Bruce knew or should have known of her disturbed mental state. The company of the Bruce was small, about twenty-four seamen in all, and the captain under the maritime law was the guardian of the seamen as wards of the admiralty. Murphy v. American Barge Line Co., su-

pra.[10] It should be borne in mind also that the captain, as shown by plaintiff's Exhibit No. 2, stated that Spellman's condition was "very bad". While he testified that he made this notation and the others on the exhibit in order to save Spellman from discipline by her union, the question of why he made the notation and what he meant by it is a jury question.

In conclusion we point out that it will be necessary for the court below when the evidence has been received at the new trial adequately and clearly to charge the jury upon (a), (b) and (c). We state also that the circumstances of the instant case are such that it is one in which the device of special findings by the jury may be profitably employed.

The judgment based on the verdicts in favor of American will be reversed and the case will be remanded for a new trial.

Jesse R. Mowery, in pro. per.

Richard W. Ervin, Atty. Gen. of Florida, Reeves Bowen, Asst. Atty. Gen. of Florida, for appellee.

Before SIBLEY, McCORD and WALLER, Circuit Judges.

[10] Judge Goodrich said, 169 F.2d at page 64, "It is worth while reminding ourselves of the orthodox rule that seamen are wards of the admiralty."