VIRGIL T. THOMAS, APPELLANT-PETITIONER, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND AMERICAN EXPORT LINES, INC., RESPONDENTS.

Argued October 19, 20, 1964—Decided January 13, 1965.

550

Mr. *Charles Sovel* of the New York Bar argued the cause for appellant-petitioner (*Messrs. Freedman, Landy & Lorry,* of the Pennsylvania Bar, of counsel; *Messrs. Brown, Connery, Kulp & Wille,* attorneys).

Mr. *Edward A. Kaplan* argued the cause for respondents.

The opinion of the court was delivered by

HANEMAN, J. This appeal involves a denial by the Division of Employment Security, Department of Labor and Industry (Division) of plaintiff's claim for benefits under the Temporary Disability Benefits Law, *N. J. S. A.* 43:21–25 *et seq.* The denial was affirmed by the Appellate Division, 83 *N. J. Super.* 91 (1964), and plaintiff's petition for certification was granted by this Court. 42 *N. J.* 418 (1964).

Plaintiff, a merchant seaman, was employed as a wiper on the *S. S. Exemplar,* a vessel owned and operated by American Export Lines (American Export), a New Jersey corporation, and registered, enrolled and licensed under the laws of the United States. American Export is a "covered employer" under the Unemployment Compensation Law, *R. S.* 43:21–1 *et seq.,* as amended, and the Temporary Disability Benefits Law, *supra.* Having become ill while at sea, plaintiff contacted the United States Public Health Service Hospital, at Staten Island, New York, when the ship docked in New York. He reported there on February 7, 1963 and was treated as an outpatient until February 14, 1963, at which time he was admitted for inpatient care. He remained in the hospital until May 6, 1963, when he was "discharged not fit for duty" and placed on outpatient care.

During the periods of outpatient care plaintiff received eight dollars per day from American Export pursuant to maintenance and cure requirements of maritime law. See

*Seatrain Lines, Inc. v. Medina,* 39 *N. J.* 222 (1963). Pursuant to the provisions of 42 *U. S. C. A.* § 249, no charge was made by the Public Health Service for his care and treatment during his sojourn in the hospital, but he received no cash payments from American Export while a patient in the hospital.

Plaintiff's claim for temporary disability benefits during the period of hospitalization was denied by the Division, on the ground that no benefits were payable for any period for which a seaman was entitled to receive maintenance and cure, relying upon this Court's decision in *Seatrain, supra.* On appeal, the Board of Review of the Division (Board) affirmed, and its ruling was sustained by the Appellate Division.

The bar to plaintiff's entitlement to temporary disability benefit payments is asserted to arise by virtue of the provisions of *N. J. S. A.* 43:21–30, which reads in part:

> "No benefits shall be required or paid under this act for any period with respect to which *benefits are paid or payable* under any unemployment compensation or similar law, or under any disability or cash sickness benefit or similar law, of this State or of any other State or of the Federal Government." (Emphasis supplied)

The question with which we are now confronted is whether the free inpatient hospital services obtained by plaintiff from the Public Health Service were benefits "paid or payable under any unemployment compensation or similar law, or under any disability or cash sickness benefit or similar law, * * * of the Federal Government."

In order to ascertain the meaning of these words recourse must be had to the purpose for which the statute was enacted and the mischief it was intended to eliminate, and all parts of the statute must be read so that they are in alignment with the intent of the entire act. *Seatrain Lines, Inc. v. Medina, supra,* 39 *N. J.,* at *p.* 226. The objective of and the purpose behind the Temporary Disability Benefits Law was defined by the Legislature in *N. J. S. A.* 43:21–26 to be a *"payment* of reasonable benefits" to "replace wage loss." (Em-

phasis supplied) This contemplates a payment of cash to the disabled employee. Consistent with the above conclusion, the Legislature defined disability benefits in *N. J. S. A.* 43:21–27(f) as follows:

" 'Disability benefits' shall mean any cash payments which are payable to a covered individual pursuant to this act."

In *Ford Motor Co. v. N. J. Dept. of Labor and Industry*, 5 *N. J.* 494, 502 (1950), the Court stated:

"Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified by its associates of restricted sense. The general word is qualified by the particular word. *Jersey Central Power and Light Company v. State Board of Tax Appeals*, 131 *N. J. L.* 565 (*E. & A.* 1944). The principle is expressed in the doctrine of *noscitur a sociis* and the variant rule of *ejusdem generis*. A word is known from its associates."

Thus, although the word "benefits" standing alone has a more expansive meaning than "cash payments," that word, when used in the exclusionary portion of *N. J. S. A.* 43:21–30 must have been employed to connote "disability benefits" as restrictively defined in *N. J. S. A.* 43:21–27(f). This conclusion is strengthened by the modification of "benefits" by the words "paid or payable."

The intent to restrict the bar against payments under the Temporary Disability Benefits Law to instances where an otherwise qualified employee has received *monetary* payments under an "unemployment compensation * * * disability or cash sickness benefit or similar law," is thus exhibited. Plaintiff, not having received any such payments while in the hospital, is not barred from receiving the payment here sought.

We conceive, however, that some further comment should be made on the Division's contention that the food and lodging which plaintiff received from the Public Health

Service while he was in the hospital, incidental to medical treatment, was furnished under an "unemployment compensation * * * disability or cash sickness benefit or similar law." It must be remembered that we are here concerned with the nature of the law under which he obtained the subsistence and lodging. We are not concerned with what he might have received from some other source had the services which he received not been available. Admittedly, had such food and housing during the time he was an inpatient not been available, or had he been receiving outpatient treatment from the Public Health Service, he would have qualified for maintenance from his employer. *Kossick v. United Fruit Co.*, 365 *U. S.* 731, 737, 81 *S. Ct.* 886, 6 *L. Ed. 2d* 56 (1961); *Calmar S. S. Corp. v. Taylor*, 303 *U. S.* 525, 531, 58 *S. Ct.* 651, 82 *L. Ed.* 993 (1938); *Murphy v. American Barge Line Co.*, 169 *F. 2d* 61, 63 (3 *Cir.* 1948). *Cf. Spellman v. American Barge Line Co.*, 176 *F. 2d* 716, 719 (3 *Cir.* 1949); *The Bouker No.* 2, 241 *F.* 831, 835–836 (2 *Cir.* 1917). Here, however, plaintiff incurred no out of pocket expenses as a result of his hospitalization, and the liability of his employer for maintenance and cure never arose. See *Johnson v. United States*, 333 *U. S.* 46, 68 *S. Ct.* 391, 92 *L. Ed.* 468 (1947). That is not to say, however, that because plaintiff received from the Public Health Service (under 42 *U. S. C. A.* § 249) the equivalent of what he would have received under the doctrine of maintenance and cure, he is barred from receiving benefits under *N. J. S. A.* 43:21–25 *et seq.* The former is not an "unemployment compensation * * * disability or cash sickness benefit or similar law," but rather a medical service law.

The services rendered by the Public Health Service by virtue of 42 *U. S. C. A.* § 249 are concerned with "medical, surgical, and dental treatment and hospitalization without charge." No provision is made for maintenance for a seaman who is not hospitalized, leading to the conclusion that food and lodging furnished by the hospital are only incidental to medical care. The statute which established public medical

services for merchant seamen had its genesis in an act of Congress in 1798. 1 *Stat.* 605–606. It is recognized that this law was one of the earliest forms of compulsory medical service. From 1798 to 1884 the funds for the service were provided by a deduction from the monthly wages of the seamen. From 1884 to 1905 the funds for supporting the marine hospitals were collected from the ship owners in the form of a tax on the tonnage of the vessels. The funds raised by both of these measures were frequently inadequate and required Congressional deficiency appropriations. Since 1905 the hospitals have been entirely supported by the government. *Straus, Medical Care for Seamen, pp.* 30, 120 (1950); *Williams, The United States Public Health Service, 1798–1950* (1951). It can thus be seen that these two services have no relationship other than that both are available to seamen, and to interject maintenance and cure into the problem before us serves merely to confuse the issue.

The medical care provided for seamen by the Public Health Service is much like the services available to a veteran "unable to defray the expenses of necessary hospital care" under the Veterans' Benefit Act, 38 *U. S. C. A.* § 610. The controlling test under the latter statute is whether the applicant is a veteran. The Division of Employment Security has and does pay disability benefits to a patient in a Veterans' Hospital receiving the same care accorded this plaintiff by the Public Health Service. Although the Division seeks to justify the eligibility of a patient in a Veterans' Hospital for temporary disability benefits, while at the same time denying them to a seaman in a Public Health Service Hospital, we can perceive no real basic difference. Were we to accede to these two diametrically opposed positions of the Division it would follow logically that a seaman eligible for both Public Health Service and Veterans' Administration treatment, who elected to accept the former, would forfeit his right to temporary disability cash benefits, but if he elected to accept the latter would receive such benefits. The inconsistency of such a result is self-evident.

The judgment of the Appellate Division is therefore reversed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.